1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| JULIA WORTH STURM, et al., | ) | Case No. CV 12-07305 DMG (AGRx) |
| | ) | |
| Plaintiffs, | ) | **ORDER RE DEFENDANTS' MOTION** |
| v. | ) | **FOR SUMMARY JUDGMENT [DOC.** |
| | ) | **# 31]** |
| DAVLYN INVESTMENTS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on the Motion for Summary Judgment filed by Defendants Davlyn Investments, Inc., and DLGP Aventine, LLC.  [Doc. # 31].  The Court held a hearing on September 27, 2013.  For the reasons discussed below, Defendants' Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part.

**I.**

**PROCEDURAL HISTORY**

On August 24, 2012, Plaintiffs filed the operative Complaint in this Court against Defendants Davlyn Investments, Inc. and DLGP Aventine, LLC, asserting the following

claims: (1) disability discrimination in violation of 43 U.S.C. § 3604 of the Fair Housing Amendments Act of 1988 ("FHAA");[1] (2) race discrimination in violation of 43 U.S.C. § 3604 of the Fair Housing Amendments Act of 1988 ("FHAA"); (3) disability discrimination in violation of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12955(c); (4) disability discrimination in violation of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12955 *et seq*.; (5) disability and race discrimination in violation of the Unruh Civil Rights Act ("Unruh"), Cal. Civ. Code §§ 51, 54.3; and (6) negligent failure to "supervise themselves regarding compliance with" federal and state housing laws, negligent failure to supervise employees, and negligent failure "to operate [the Aventine] in conformity with accepted industry custom and standards." [Doc. # 1.] Defendants filed an Answer on October 10, 2012. [Doc. # 9.] On July 23, 2013, Defendants filed the instant Motion.[2]

---

[1] Plaintiffs label their first claim as "Violations of the Provisions of 42 U.S.C. § 3604 of Title VIII of the Civil Rights Act of 1968." (Compl. at 14.) The Civil Rights Act of 1968 did not apply to disability discrimination claims until amended in 1988, and Plaintiffs elsewhere in their Complaint describe this claim as brought under the Fair Housing Amendments Act of 1988. (Compl. ¶ 1.)

[2] Plaintiffs argue that Defendants failed to meet and confer at least five days prior to the filing of their motion for summary judgment, in violation of Local Rule 7-3 and the Court's August 31, 2012 Initial Standing Order. (Opp'n at 1.) The Court does not strike the motion because it is now fully briefed and the Court prefers to address the motion on its merits. Moreover, Plaintiffs have not demonstrated prejudice due to Defendants' non-compliance as there is no evidence that, if a timely meet and confer had occurred, they would have conceded any of the arguments raised in Defendants' motion.

Defendants argue that Plaintiffs' Opposition to Summary Judgment, at 35 pages in length, exceeds the 25-page limit imposed by Local Rule 11-6 and that it was filed three days late in violation of Local Rule 7-9. The proper procedure would have been for Plaintiffs to seek a stipulation from opposing counsel for an oversized brief and/or seek leave of Court prior to timely filing it. Although the Court is frustrated by both sides' non-compliance with the Local Rules, much like the violation of Local Rule 7-3 discussed above, Defendants have not shown that they suffered any prejudice from Plaintiffs' transgressions. The Court admonishes both sides, however, that any future non-compliance with the Local Rules shall result in the imposition of monetary sanctions.

## II.

## FACTUAL BACKGROUND

As it must on this motion for summary judgment, the Court sets forth the material facts,[3] some of which are obviously disputed, and views all reasonable inferences to be drawn from them in the light most favorable to Plaintiffs, the non-moving party.[4]

The Aventine at West Hills ("The Aventine") is an apartment building located in Los Angeles, California.  (Tatikian Decl. ¶ 17, Ex. P [Doc. # 31-3].)  The Aventine was constructed in 1977. (Tatikian Decl. ¶ 20, Ex. S [Doc. # 31-7].)[5]  The eleven plaintiffs are all former residents.

### A.    The Sturm Plaintiffs

Julia Worth Sturm ("J.W. Sturm") lived in apartment 146 with her two children−daughter and co-plaintiff Sandra Ashley Sturm ("S.A. Sturm") and son, Jared−from March 2011 to October 2011.  (Defendants' Statement of Undisputed Facts ("DSUF") ¶ 16 [Doc. # 31-2].)

J.W. Sturm is a Caucasian adult who suffers from a "chronic disabling and regional pain syndrome, which severely affects her mobility."   (Plaintiffs' Statement of

---

[3] Plaintiffs state that many facts included herein are disputed because they are "irrelevant" or the testimony is "incomplete."  The Court has reviewed all such blanket objections and finds them without merit.  Plaintiffs must establish a genuine dispute of material fact with more than a conclusory statement.  "Rule 56(e) . . . requires the nonmoving party to . . .  designate specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotation marks omitted).

[4] Defendants raise evidentiary objections to the declarations of Ana Portillo and Veronica Gutierrez.  As the Court does not rely on the challenged evidence in deciding the instant motion, it need not address this objection at this time.

[5] Defendants submitted a copy of the Los Angeles County Assessor's "Property Information" for the Aventine.  They request that the Court take judicial notice.  Under Federal Rule of Evidence 201, the Court may take judicial notice of a fact taken from public records on government websites because they are recognized by courts as sources of reliable documentation.  *L'Garde, Inc. v. Raytheon Space & Airborne Sys.*, 805 F. Supp. 2d 932, 938 (C.D. Cal. 2011).  Accordingly, the Court takes judicial notice of the year in which the Aventine was built.

Uncontroverted Facts ("PSUF") ¶ 162 [Doc. # 37].)  J.W. Sturm testified that she does not think she was discriminated against on the basis of her disability when she initially rented her apartment.  (DSUF ¶ 7.)

The Sturm Plaintiffs were evicted from the Aventine,[6] which they claim was in retaliation for their various complaints to management.  (Okojie Decl. ¶ 4, Ex. A ("Pl.'s J.W. Sturm Depo.")[7] at 201:2-7 [Doc. # 37-5 at A-66].)  J.W. Sturm made various requests that management address unfavorable conditions in the apartment building, including, for example, drug dealing and violence at the Aventine.  (DSUF ¶ 13.)

The Sturms made various requests and complaints regarding accommodations for J.W. Sturm's disability.  J.W. Sturm requested a handicapped parking spot on several occasions.  (Tatikian Decl. ¶ 2, Ex. A ("Def.'s J.W. Sturm Depo.") at 60:10-12 [Doc. # 31-4].)  She was told there were no handicapped spots available.  (DSUF ¶ 15; Pl.'s J.W. Sturm Depo. at 60:20-22.)   J.W. Sturm testified, however, that the parking marked as handicapped at the Aventine was not closer to her apartment than the parking space assigned to her.  (Pl.'s J.W. Sturm Depo. at 61:1-9.)  J.W. Sturm asked management to install handrails in common areas, repair  handrails on stairs,[8] and provide ramps to accommodate those who, like herself, are mobility impaired.  (Pl.'s J.W. Sturm Depo. at 73:1-24; Tatikian Decl. ¶ 4, Ex. C. [Doc. # 31-4].)

---

[6] It is not clear from the record what reason, if any, was given for the Sturm family's eviction. In their motion, Defendants have not articulated what legitimate basis existed for the eviction.  In any event, there does not appear to be any cause of action in the Complaint specifically addressing this retaliation claim.

[7] Because both parties submit different portions of the same depositions, the Court marks the cited portion of the deposition as "Def.'s" or "Pl.'s" depending on which party submitted the evidence.

[8] Plaintiffs submitted as evidence four "Complaint Notifications," three of which are regarding handrails or stairs, dated October 1, 2010, August 10, 2011, August 31, 2011, and September 2, 2011, sent to Davlyn Investments from the Los Angeles Housing Department regarding the Aventine.  (Okojie Decl. ¶ 4, Ex. A [Doc. # 37-5].)  No violation was found in regard to three of these complaints, and in the one case where a violation was found, it was remedied by the compliance due date. (Supplemental Tatikian Decl. ¶¶ 2-5, Exs. 1 – 4 [Doc. # 39-2].)

J.W. Sturm also made oral and written complaints regarding management's treatment of African American tenants. (Pl.'s J.W. Sturm Depo. at 69:1-20; 76:3-25; 77:1-11; (Okojie Decl. ¶ 4, Ex. A at 37-38 [Doc. # 37-4].)  She testified that Aventine manager Isaac Montealegre and assistant manager Shelley Trout told her that they wanted to remove all the "niggers" from the apartment complex.  (Pl.'s J.W. Sturm Depo. at 35:8-25.)[9]  She further testified that she witnessed African Americans being "singl[ed] out" and ordered out of the pool when non-African Americans were not.  (*Id.* at 38:21-25; 39:1-25.)

S.A. Sturm also witnessed mistreatment of African Americans.  She testified that she heard management tell African Americans not to stand in front of the apartments. (Okojie Decl. ¶ 5, Ex. B ("Pl.'s S.A. Sturm Depo.") at 39:14-18 [Doc. # 37-6].)  She witnessed management tell African Americans to leave the common area and use the derogatory term "nigger."  (*Id.* at 149:13-25; 150:1-22.)  S.A. Sturm testified that Aventine manager Shelley said "she didn't like African American people."  (*Id.* at 95:21-23; 96:8-18.)[10]

## B.   <u>The Magee Plaintiffs</u>

Hope Magee lived in apartment 148 with her six children−two of whom are plaintiffs, Paulyisha Shaw and Charles Shaw−from September 2009 to November 2011. (DSUF ¶¶ 22;  23;  164.)  The Magee Plaintiffs are African American.  (DSUF ¶ 163.)

---

[9] Defendants' object that this statement is hearsay in violation of Fed. R. Evid. 801-802 and is irrelevant.  The Court disagrees.  Plaintiff Sturm testified in her deposition that she herself heard Isaac Montealegre and Shelley Trout, Defendants' apartment managers, make this statement.  Accordingly, it is an admission of a party opponent and is not hearsay.  Fed. R. Evid. 801(d)(2)(D).  Plaintiffs have a claim of race discrimination under the FHAA.  The statement is relevant because a "plaintiff may establish discrimination in violation of the FHAA under a theory of disparate treatment or disparate impact."  *Budnick v. Town of Carefree*, 518 F.3d 1109, 1114 (9th Cir. 2008).  Defendants' objections are overruled.

[10] Defendants object that this statement is hearsay in violation of Fed. R. Evid. 801-802.  The Court overrules the objection for the same reason discussed in footnote 9, *supra*.

1    Hope Magee does not have any disabilities that prevent her from engaging in normal life

2    activities.  (DSUF ¶ 32.)

3        The Magee family left the Aventine when their lease was not renewed.  Defendants

4    claim that the lease was not renewed because they no longer wanted to participate in

5    Section 8 housing.  (Okojie Decl. ¶ 6, Ex. C ("Pl. Hope Magee Depo.") 60:13-18 [Doc. #

6    37-7].)  Plaintiffs have offered no evidence to refute this explanation.

7        Hope Magee believes that the Aventine discriminated against her family on the

8    basis of race.  She was initially assigned an apartment closer to the middle of the

9    apartment complex and then she was switched to a corner unit at the back of the

10   apartment that was "subpar." (DSUF ¶ 26.)  The apartment was "not as clean or well-

11   kept as the other one that [she] was shown."  (Tatikian Decl. ¶ 6, Ex. E ("Def.'s Hope

12   Magee Depo.") at 35:3-4 [Doc. 31-4].)  In the area of the Aventine where her apartment

13   was located, there were African American, Hispanic, and Caucasian families.  (DSUF ¶

14   31.)  Hope Magee testified that Aventine employee Jenny Pomboza referred to African

15   Americans as "you guys" and "you people."  (Pl.'s Hope Magee Depo. at 130: 9-25.)

16   She also testified that management would accuse only African Americans of selling

17   drugs, loitering, and drinking.  (*Id.* at 125:16-24.)  She asserted that management

18   prevented African Americans from using certain areas of the building, such as the

19   business center.  (*Id.* at 133:5-13.)  She believes management retaliated against her for

20   complaining about race discrimination by lodging false accusations against her and her

21   family.  (*Id.* at 112:1-7.)

22       Paulyisha and Charles Shaw both testified that security guards called African

23   Americans "niggers" in their presence.  (Okojie Decl. ¶ 7, Ex. D ("Pl.'s Paulyisha Shaw

24   Depo.") at 35:20-23 [Doc. # 37-8][11]; Okojie Decl. ¶ 8, Ex. E ("Pl.'s Charles Shaw

25

26   _____

27       [11] Defendants object to this statement and others as hearsay because the deponent cannot
     remember the name of the security guard and/or when the statement was made.  They also assert that
28   these statements regarding derogatory language are irrelevant.  The Court overrules all such objections.
     First, the statement is not being offered to prove the truth of the matter asserted, but rather to show that

Depo.") at 56:21-25 [Doc. # 37-9].)  Charles Shaw testified that he was asked to leave the gym every time he went.  (Pl.'s Charles Shaw Depo. at 32: 13-24.)

## C.   **The Moore Plaintiffs**

Marlene Michele Moore ("M.M. Moore") lived at the Aventine with the following plaintiffs:  her sons, Alfonzia Moore and Paul Person, her daughter, Michele Person, her granddaughter Michele Moore, and her daughter-in-law, Almalia Ocon.  (DSUF ¶¶55; 78.)  The Moore family lived at the Aventine from sometime in the spring of 2008 to November 2011.  (DSUF ¶ 164.)  The family first lived in apartment 117 and then moved to apartment 119.  (DSUF ¶ 75.)  The Moore family moved out of the Aventine of their own "free will" because M.M. Moore "was almost becoming a shut-in" due to the stairs leading to her apartment.  (DSUF ¶ 84; Tatikian Decl. ¶ 11, Ex. J ("Def.'s Alfonzia Moore Depo.") at 29:7-20 [Doc. # 31-6].)

The Moore and Person Plaintiffs are African American.  (Decl. M.M. Moore ¶ 4 [Doc. # 37-10].)   M.M. Moore is disabled.  She suffers from high blood pressure, has two artificial knee replacements, and has had two disc surgeries on her back, all of which impairs her mobility and causes her to use a wheelchair. (DSUF ¶ 165.)

Michele Pearson found and initially rented the apartment for the Moore family. (DSUF ¶ 56.)  Michele Pearson testified that she did not have any problems renting the apartment based on her race.  (Tatikian Decl. ¶ 15, Ex. N ("Def.'s Michele Pearson Depo.") at 40: 1-9; 41:2-5 [Doc. # 31-7].)   M.M. Moore also testified that Aventine manager "Teresa" did not say anything to her that discriminated against her on the basis of her race or disability when the family initially rented the apartment.  (Tatikian Decl. ¶ 10, Ex. I ("Def.'s M.M. Moore Depo.") at 43: 22-25; 44:1-24 [Doc. 31-5].)  She similarly

---

the statement was made.  The statement is therefore not hearsay.  Fed. R. Evid. 801(c).  Second, while the relevance would be somewhat attenuated if the statement were offered in isolation, Plaintiffs offer it here to show that various people hired by Defendants used derogatory language of this sort and that it was pervasive at the Aventine.

did not remember anything Aventine's manager "Shelley" said to her that discriminated on the basis of disability or race. (*Id.* at 104: 23-25; 105:1-4.)

To accommodate her disability, M.M. Moore requested the installation of handicap accessible ramps and handrails, the repair of "wobbly" handrails, and a handicapped parking space. (Okojie Decl. ¶ 10, Ex. F ("Decl. of M.M. Moore") at ¶ 11 [Doc. # 37-10].) After her requests were "ignored," she told management that she would "take [the] matter into [her] own hands and install or fix" the ramps and handrails at her own expense, but she was told that she could not make such changes to common areas. (*Id.* ¶¶ 11-14.)

M.M. Moore did not have a car while she was a tenant at the Aventine (DSUF ¶ 59.). Other members of her family, Alfonzia Moore and Michele Pearson, had cars. (DSUF ¶ 67.) Alfonzia Moore testified that he was given a parking space about 30 feet from both apartments 117 and 119. (Def.'s Alfonzia Moore Depo. at 43:10-20.) He said that management knew of his mother's condition and gave him a parking space that was close to his apartment so his mother would not have to travel. (*Id.* at 43:10-20.) Amalia Ocon testified that she was assigned a parking space that allowed her to "just back up and pick [M.M. Moore] up after [she] helped [M.M Moore] down the steps," which was about 15 to 30 feet from the apartment. (Tatikian Decl. ¶ 16, Ex. O ("Def.'s Amalia Ocon Depo.") at 27:1-7 [Doc. # 31-7].)

Marlene Moore, M.M. Moore's granddaughter, claims she was discriminated against by Aventine employees on the basis of her race. (Tatikian Decl. ¶ 14, Ex. M ("Def.'s Marlene Moore Depo.") at 108: 19-20 [Doc. # 31-7].) When she was in a common area of the Aventine, a security guard said "that us N word are not allowed to be here." (Okojie Decl. ¶ 13, Ex. I ("Pl.'s Marlene Moore Depo.") at 115:5-17 [Doc. # 37-13].) On one occasion, when she was outside at night with other young friends and with adults who were drinking, a security guard asked Marlene and her friends to leave. She believes this was because she is African American. (*Id.* at 108:22-25; 109:1-12.) She

1
2
3

also testified that she felt she was discriminated against because management asked her to get out of the pool, but testified that she could not recall being ordered out of the pool when she had an adult with her.  (*Id.* at 4-16**.)**

4
5
6
7
8

Paul Robert Person saw Aventine manager "Shelley" yelling at "black kids, telling them to get away from the pool [and] to go home."  (Tatikian Decl. ¶ 13, Ex. L ("Def.'s Paul Robert Pearson Depo.") at 49:13-15 [Doc. # 31-6].)  He also testified that when children of several races were playing in flower beds, "Shelley" yelled at the kids and only "made the black kids go home."  (*Id.* at 49: 21-25; 50:1-14.)

9
10
11
12

Alfonzia Moore overheard guards using the Spanish equivalent of "the 'N' word" to refer to African Americans.  (Okojie Decl. ¶ 11, Ex. G, ("Pl.'s Alfonzia Moore Depo.") at 52:1-5; 54:1-2 [Doc. # 37-11].)

13

**III.**

14

**STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT**

15
16
17
18
19
20
21
22

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *accord Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011).  Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

23
24
25
26
27
28

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp., supra,* 477 U.S. at 323.  Once the moving party has met its initial burden, Rule 56(c) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324 (quoting  Fed. R. Civ. P. 56(c), (e) (1986)); *see also Norse v. City of*

*Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (*en banc*) ("Rule 56 requires the parties to set out facts they will be able to prove at trial."). "[T]he inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

**IV.**

**DISCUSSION**

Defendants move for summary judgment on each of the six causes of action in Plaintiffs' Complaint.

**A.** **Plaintiffs' Claims of Disability Discrimination**

Plaintiffs' First, Third, Fourth, and Fifth Causes of Action assert the following claims of disability discrimination under FHAA, FEHA, and Unruh.

**1. Failure to Make Reasonable Accommodations for Disabilities in Violation of the FHAA, 42 U.S.C. § 3604(f)(3)(B)**

Under FHAA, discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). The FHAA "imposes an affirmative duty upon landlords reasonably to accommodate the needs of handicapped persons." *United States v. Cal. Mobile Home Park Mgmt. Co.*, 29 F.3d 1413, 1416 (9th Cir. 1994). This duty is in regard to physical accommodations and to administrative policies governing rentals. *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1146-47 (9th Cir. 2003).

To prevail on a claim under 42 U.S.C. § 3604(f)(3)(B), a plaintiff must demonstrate that: (1) she is handicapped within the meaning of 42 U.S.C. § 3602(h); (2) the defendant knew or should reasonably be expected to know of the handicap; (3)

accommodation of the handicap may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) the accommodation is reasonable; and (5) the defendant refused to make the requested accommodation. *DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006). The reasonable accommodation inquiry is "highly fact-specific, requiring case-by-case determination." *Id.* at 1179. "Ordinarily, an accommodation is reasonable under the FHAA when it imposes no fundamental alteration in the nature of the program or undue financial or administrative burdens." *Giebeler*, 343 F.3d at 1157.

Plaintiffs argue that defendants failed to make reasonable accommodations for Plaintiffs J.W. Sturm and M.M. Moore's disabilities. Specifically, they assert that Defendants denied their requests to install ramps, to install and fix handrails, and to provide handicap parking spaces. (Compl. ¶¶ 46, 61.)

### a. Construction of Ramps and Handrails

Defendants contend that 42 U.S.C. § 3604(f)(3)(B) is inapplicable to Plaintiffs' claim that Defendants failed to construct ramps and additional stair railings because these types of accommodations do not fall under the "rules, policies, practices, or services" subsection of 42 U.S.C. § 3604(f)(3)(B), but rather under 42 U.S.C. § 3604(f)(3)(C), which pertains to the "design and construction" of buildings.

Reasonable accommodations are not required:

> in connection with the design and construction of covered multifamily dwellings for first occupancy after the date that is *30 months after September 13, 1988* . . . a failure to design and construct those dwellings in such a manner that–(i) the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons . . . (iii) all premises within such dwellings contain the following features

of adaptive design:  (I) an accessible route into and through the

dwelling. . . .

42 U.S.C. § 3604(f)(3)(C) (emphasis added).

Although the Aventine was built in 1977, Plaintiffs argue that the date restriction in 42 U.S.C. § 3604(f)(3)(C) is not dispositive.  Yet, none of the cases they cite in support of this contention address the applicability of section 3604(f)(3)(B) to the "design and construction" of a dwelling for first occupancy 30 months after September 13, 1988.  *See Giebeler*, 343 F.3d at 1144 (discussing whether the FHAA requires apartment owners to accommodate disability in regard to financial arrangement); *Cal. Mobile Home Park Mgmt. Co.*, 29 F.3d at 1416 (examining the applicability of fee rules to handicap residents under § 3604(f)(3)(B)); *Dadian v. Vill. of Wilmette*, 269 F.3d 831, 839 (7th Cir. 2001) (discussing the failure to reasonably accommodate individuals with disabilities in regard to a driveway permit).

The Court concludes that Plaintiffs' reasonable accommodation claim regarding the installation of ramps and stair handrails is not actionable because the Aventine was constructed in 1977, and the plain text of the applicable statute  exempts discrimination claims "in connection with the design and construction" of dwellings for first occupancy "after the date that is 30 months after September 13, 1998."  42 U.S.C. § 3604(f)(3)(C). The Department of Housing and Urban Development's ("HUD") regulation 24 C.F.R. § 100.205, titled "Design and construction requirements," supports the conclusion that ramps and stair handrails fall under 42 U.S.C. § 3604(f)(3)(C)'s exemption.   This provision states that "[c]overed multifamily dwellings for first occupancy after March 13, 1991 shall be designed and constructed to have at least one building entrance on an accessible route," and discusses "steep stairways" as a concern falling under the provision. 24 C.F.R. §§ 100.205(a)-(b).  *See also Garcia v. Brockway*, 526 F.3d 456, 459 (9th Cir. 2008) (discussing ramps under the design-and-construction requirements of the FHAA).

1    Accordingly, the Court **GRANTS** summary judgment on Plaintiffs' reasonable
2 accommodation claim under 42 U.S.C. § 3604(f)(3)(B) regarding the installation of
3 ramps and handrails.

4              **b.  Repair of Handrails**

5    Plaintiffs also assert that handrails needed repair during Plaintiffs' tenancy and that
6 Defendants failed to make necessary repairs and therefore violated 42 U.S.C.
7 § 3604(f)(3)(B), which states that "discrimination" includes "a refusal to make reasonable
8 accommodations in rules, policies, practices, or services, when such accommodations
9 may be necessary to afford such person equal opportunity to use and enjoy a dwelling."

10    Plaintiffs have presented evidence that at least during some periods when they
11 lived at the Aventine the handrails may have been in need of repair.  (Pl's J.W. Sturm
12 Depo. at 73:1-24; Tatikian Decl. ¶ 4, Ex. C [Doc. # 31-4].)  Defendants argue that there is
13 no genuine dispute of material fact regarding hand rails or railings because Los Angeles
14 Housing Department records of complaints regarding handrails show no violations or that
15 the violations were resolved. (Reply at 9.)

16    The Court concludes that there is a triable issue of fact regarding whether
17 Defendants failed to make reasonable accommodations in "services" under 42 U.S.C.
18 § 3604(f)(3)(B) by repairing handrails.  Regardless of the disputed Los Angeles Housing
19 Department records, Plaintiffs' evidence creates a material dispute as to whether
20 handrails needed repair—but were not repaired or were not repaired in a reasonably
21 timely manner.

22    Construing the evidence in the light most favorable to Plaintiffs, the Court
23 **DENIES** summary judgment on Plaintiffs M.M. Moore and J.W. Sturm's claim for
24 reasonable accommodations in "services" under 42 U.S.C. § 3604(f)(3)(B) with regard to
25 the repair of handrails.[12]

---

[12] It is unclear to the Court why any other plaintiffs besides J.W. Sturm and M.M. Moore would
have standing to assert this claim.  This is a problem inherent in Plaintiffs' Complaint.  It asserts all

### c.  Handicapped Parking Spaces

Plaintiffs next claim that Defendants failed to make "reasonable accommodations in rules, policies, practices, or services" regarding access to handicapped parking in violation of 42 U.S.C. § 3604(f)(3)(B).

In illustrating examples of reasonable accommodations under section 3604(f)(3)(B), federal regulations describe circumstances not unlike those in this case:

> Example (2):   Progress Gardens is a 300 unit apartment complex with 450 parking spaces which are available to tenants and guests of Progress Gardens on a first come first served basis.  John applies for housing in Progress Gardens.  John is mobility impaired and is unable to walk more than a short distance and therefore requests that a parking space near his unit be reserved for him so he will not have to walk very far to get to his apartment.  It is a violation of § 100.204 for the owner or manager of Progress Gardens to refuse to make this accommodation.  Without a reserved space, John might be unable to live in Progress Gardens at all or, when he has to park in a space far from his unit, might have great difficulty getting from his car to his apartment unit.   The accommodation therefore is necessary to afford John an equal opportunity to use and enjoy a dwelling.   The accommodation is reasonable because it is feasible and practical under the circumstances.

---

claims on behalf of all Plaintiffs in an undifferentiated fashion.  Because the question of whether certain Plaintiffs have standing to assert certain causes of action implicates subject matter jurisdiction over their claims, this Court can raise the issue *sua sponte* at any time.  *See* Fed. R. Civ. P. 12(b)(h)(3).  As the parties have not briefed the issue of standing, the Court requests that the parties do so and will set a briefing schedule for that purpose.

24 C.F.R. § 100.204.  In addition, Guidelines published by HUD indicate a housing provider must make changes to its policy regarding parking spaces if an individual needs a reserved space close to her apartment due to disability:

> A resident with a mobility impairment . . . requests an assigned accessible parking space close to the entrance to her unit as a reasonable accommodation.  There are available parking spaces near the entrance to her unit that are accessible, but those spaces are available to all residents on a first come, first served basis.  The provider must make an exception to its policy of not providing assigned parking spaces to accommodate this resident.

*Astralis Condominium Assn. v. Secretary, U.S. Dept. of HUD,* 620 F.3d 62, 68 (1st Cir. 2010) (citing Joint Statement of Dep't of Hous. & Urban Dev. & Dep't of Justice, *Reasonable Accommodations Under the Fair Housing Act* 6 (May 17, 2004)).

Defendants do not dispute that Plaintiffs have established the first two requirements for a reasonable accommodation claim under 42 U.S.C. § 3602(h):  that Plaintiffs J.W. Sturm and M.M. Moore had a disability while they were residents at the Aventine or that Defendants' knew of their disability.  Instead, they appear to contest the third requirement:  that the requested accommodation is reasonable.

Plaintiffs J.W. Sturm and M.M. Moore each testified that they needed a handicapped parking space and requested one.  (Def.'s J.W. Sturm Depo. at 60: 10-12; M.M. Moore Decl. ¶ 11.)  Defendants point to J.W. Sturm's deposition testimony that she did not know of any parking space becoming available that was closer to her apartment than the one she was assigned, and to evidence that M.M. Moore did not own a car.  (Pl.'s J.W. Sturm Depo. at 60: 1-9; DSUF ¶ 59.)  They also point to evidence that M.M. Moore's son, Alfonzio Moore, testified that his parking space was about 30 feet from both apartments the family lived in and that the Aventine gave him the parking space

1
2
"because it was close to our apartment" so he and his mother "would not have to travel." (Def.'s Alfonzia Moore Depo. at 43:10-20.)

3
4
5
6
7
The Court concludes that on the basis of these facts and the current record, there is no evidence that the Aventine did not accommodate M.M Moore's parking request−indeed, her lack of a car and Alfonzio Moore's testimony suggest the opposite. The Court therefore **GRANTS** summary judgment on M.M Moore's claim for reasonable accommodations in parking under 42 U.S.C. § 3604(f)(3)(B).

8
9
10
11
12
13
14
15
16
With regard to J.W. Sturm's request for handicapped parking, however, Defendants have not established that they accommodated her request or that her request was unreasonable.  Nor have they shown that assigning her a parking spot closer to her home would have imposed "a fundamental alteration" or an "undue . . . burden." *Giebeler*, 343 F.3d at 1157.   The Court therefore finds a triable issue of fact as to whether Defendants violated 42 U.S.C. § 3604(f)(3)(B) by failing to accommodate Plaintiff J.W. Sturm request for handicapped parking and **DENIES** summary judgment as to J.W. Sturm's claim in this regard.

17
18
**2. Discriminatory "notice, statement, or advertisement" in violation of FHAA, 42 U.S.C. § 3604(c)**

19
20
21
22
23
24
25
26
27
28
Under 42 U.S.C. § 3604(c), it is unlawful to "make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on . . . handicap . . . or an intention to make any such preference, limitation, or discrimination."  42 U.S.C. § 3604(c).  "A statement violates 42 U.S.C. § 3604(c) if the statement, when heard by an ordinary reader, would conclude that the rule suggests a preference." *Iniestra v. Cliff Warren Invs., Inc.*, 886 F. Supp. 2d 1161, 1169 (C.D. Cal. 2012) (citing  *U.S. v. Hunter*, 459 F.2d 205, 215 (4th Cir. 1972)).  This provision applies to "all written or oral notices or statements by a person engaged in the sale or rental of a dwelling."  24 C.F.R. § 100.75(b).   This includes "words, phrases, photographs,

-16-

illustrations, symbols or forms which convey that dwellings are available or not available to a particular group of persons because of race, color, religion, sex, handicap, familial status, or national origin." § 100.75(c)(1).

Neither in their complaint nor in their opposition to summary judgment do Plaintiffs point to any notice, statement, or advertisement made by Defendants in regard to disability, let alone stating a preference based on disability. They thus fail to designate specific facts showing that there is a genuine issue for trial on this claim.  Defendants' motion for summary judgment on Plaintiffs' claim for violation of 42 U.S.C. § 3604(c) in regard to disability discrimination is therefore **GRANTED**.

### 3. Violation of FHAA, 42 U.S.C. § 3604(f)(3)(A), by Refusing to Permit Plaintiff Moore to Pay for Modifications to Common Areas

Plaintiffs claim that Defendants violated 42 U.S.C. § 3604(f)(3)(A), which states that discrimination against the disabled includes:

> a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises except that, in the case of a rental, the landlord may where it is reasonable to do so condition permission for a modification on the renter agreeing to restore the interior of the premises to the condition that existed before the modification, reasonable wear and tear excepted.

42 U.S.C. § 3604(f)(3)(A).

HUD's implementing regulation, 24 C.F.R. § 100.203, titled "Reasonable modifications of existing premises," repeats the language in 42 U.S.C. § 3604(f)(3)(A) and states that the application of "this section may be illustrated by the following examples," including the installation of bars in the unit's bathroom and widening a door

1
2   in the renter's unit.  24 C.F.R. § 100.203(c).  The term "modifications," however, is defined more broadly as "any change to the public or *common use* areas of a building or any change to a dwelling unit."  24 C.F.R. § 100.201 (emphasis added).

3

4
5   Because Plaintiff M.M. Moore offered to pay for modifications to common areas herself (by installing ramps and handrails) and management denied her request (M.M. Moore Decl. ¶¶ 11-14.), Plaintiffs contend that Defendants violated 42 U.S.C. § 3604(f)(3)(A).  Defendants respond that 42 U.S.C. § 3604(f)(3)(A) is limited to "premises occupied or to be occupied by" disabled persons and thus does not apply to common areas.

6
7
8
9

10  Defendants' position is belied by the case law.  The Supreme Court has instructed courts to construe the language of the FHA broadly and inclusively.  *Walker v. City of Lakewood*, 272 F.3d 1114, 1129 (9th Cir. 2001) (citing *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209 (1972)) (internal quotation marks and alterations omitted).  M.M. Moore "occupied" the common areas of the Aventine, even if she was not the exclusive occupier.  *See, e.g.*, *United States v. Freer*, 864 F. Supp. 324, 326 (1994) (violation of 42 U.S.C. § 3604(f)(3)(A) in refusal to allow tenant to install ramp in common road ); *Garza v. Raft*, No. 98-20476, 1999 WL 33882969, *3 (N.D. Cal. Nov. 30, 1999) (unpublished) (rejecting argument that 42 U.S.C. § 3604(f)(3)(A) does not apply to common areas).  Furthermore, HUD's implementing regulations for the FHAA define "premises" to include the "common use areas" of a building.  24 C.F.R. § 100.201 ("Premises means the interior or exterior spaces, parts, components or elements of a building, including individual dwelling units and the public and common use areas of a building.").  HUD's construction of the FHAA "is entitled to great weight."  *Trafficante*, 409 U.S. at 210.  The Court thus adopts HUD's construction and concludes that the FHAA's reasonable-modifications provision applies to common areas of residential complexes.

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-18-

Accordingly, the Court **DENIES** summary judgment on Plaintiff M.M. Moore's claim under 42 U.S.C. § 3604(f)(3)(A) regarding her requests to pay for reasonable modifications to common areas.

### 4. Violations of FEHA

Plaintiffs assert that Defendants violated the disability discrimination prohibitions in FEHA.   These claims are identical to those presented under the FHAA:   (1) Defendants' failure to make reasonable accommodations in regard to ramps, handrails, and parking; and (2) Defendants' violation of Cal. Gov't Code § 12955(c).

#### a.  Reasonable Accommodation Claims

FHAA standards apply to FEHA reasonable accommodation claims.   *City of Lakewood*, 272 F.3d at 1131 n.8.   Like 42 U.S.C. § 3604(f)(3)(C), FEHA defines "discrimination" to include "a failure to design and construct a covered multifamily dwelling in a manner that allows access to, and use by, disabled persons . . . ."  Cal. Gov't Code § 12955.1(a).  FEHA's design and construction provision is also limited by date.  It applies only to buildings "for which an application for a construction permit is submitted on or after July 1, 2005."  *Id*. at § 12955.1(b)(1).

This Court's conclusion, *supra*, that there is a material dispute of fact regarding whether reasonable accommodations in handicapped parking should have been offered to J.W. Sturm under the FHAA applies equally here.  *See City of Lakewood*, 272 F.3d at 1131 n.8.  To the extent that the Court disposed of Plaintiffs' reasonable accommodation claims regarding ramps and handrails under the FHAA on the basis that the Aventine was constructed before the FHAA applied, the Court similarly rejects these claims under the FEHA, which applies only to buildings constructed after 2005.

In sum, the Court **DENIES** summary judgment on Plaintiff J.W. Sturm's claim for violation of her right to reasonable accommodation under FEHA in regard to handicapped parking.  The Court also **DENIES** summary judgment on Plaintiff M.M Moore's claim of reasonable accommodations in common areas to the extent she offered

to pay for modifications herself.  The Court **GRANT**S summary judgment on Plaintiffs' FEHA reasonable accommodation claims regarding modifications to common areas through ramps and handrails paid for by the Aventine.

### b.  Cal. Gov't Code § 12955(c)

The Court's analysis regarding Plaintiffs' claim under 42 U.S.C. § 3604(c) for discriminatory statements and advertisements regarding the sale or rental of a dwelling applies with equal force to Plaintiffs' claim under Cal. Gov't Code § 12955(c).  Cal. Gov't Code § 12955(c) prohibits additional conduct but is otherwise identical to 42 U.S.C. § 3604(c), except insofar as it uses the term "housing accommodation" in place of "dwelling," and "disability" in place of "handicap."  *See* Cal. Gov't Code § 12955(c)  (it is unlawful to "make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a housing accommodation that indicates any preference, limitation, or discrimination based on . . . disability . . . or an intention to make that preference, limitation, or discrimination.")

The Court **GRANTS** Defendants' motion for summary judgment as to Plaintiffs' claim of disability discrimination under Cal. Gov't Code § 12955(c) on the same basis as that applied to Plaintiffs' claim of disability discrimination under 42 U.S.C. § 3604(c), *supra*, at IV.A.2.

### 5.  Violations of Cal. Civ. Code § 54.3

Plaintiffs' fifth cause of action states that Defendants discriminated against disabled plaintiffs in violation of Cal. Civ. Code § 54.3 by refusing to provide them "with the same advantages, privileges, or services, and in imposing additional terms and conditions on their residency."  Cal. Civ. Code § 54.3 states:

> (a) Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise

interferes with the rights of an individual with a disability under

Sections 54, 54.1 and 54.2 is liable for each offense.

Section 54, which is titled "Right to streets, highways, and other public places; disability," does not apply to housing.  *See* Cal. Civ. Code § 54.  Section 54.2, concerns the right to a guide or service dog and therefore is also not applicable.  *See* Cal. Civ. Code § 54.2.  Section 54.1(b) applies to housing accommodations.  *See* Cal. Civ. Code § 54.1(b)

Plaintiffs make an unadorned claim of "discriminatory practices" under Cal. Civ. Code § 54.3 in their complaint.  They do not specify which provision in section 54.3 applies to their claim or even mention section 54.3 in their opposition to summary judgment, let alone analyze any claim under Section 54.1(b) (the only provision that applies to housing).  Therefore, the Court is left to speculate as to the nature of Plaintiffs' specific claim.   Based on their statement that they have been denied "the same advantages, privileges, or services, and in imposing additional terms and conditions on their residency," the Court concludes that the following subsection of section 54.1 is the only one that may plausibly govern Plaintiffs' claim:

> Any person renting, leasing, or otherwise providing real property for compensation shall not refuse to make reasonable accommodations in rules, policies, practices, or services, when those accommodations may be necessary to afford individuals with a disability equal opportunity to use and enjoy the premises.

Cal. Civ. Code § 54.1(b)(3)(B).

Section 54.1(b)(4), which immediately follows the above subsection, explicitly states that modifications of property are not required:

> Nothing in this subdivision shall require any person renting, leasing, or providing for compensation real property to modify

> his or her property in any way or provide a higher degree of
> care for an individual with a disability than for an individual
> who is not disabled.

Cal. Civ. Code § § 54.1(b)(4).

The Court concludes that under the plain text of this provision, Defendants were not required to modify their property by constructing ramps and handrails.  Plaintiffs' claim for accommodations in parking, however, is covered under Cal. Civ. Code § 54.1(B) as "accommodations in rules, policies, practices, or services" and, for the reasons previously stated, the Court concludes that Plaintiff J.W. Sturm has established a material dispute of fact regarding whether reasonable accommodations were denied with regard to the provision of parking spaces.  *See McAlister v. Essex Prop. Trust*, 504 F. Supp. 2d 903, 910 (C.D. Cal. 2007) ("The Unruh Act's reasonable accommodation language is equivalent to FHAA's reasonable accommodation provision.")

The Court thus **DENIES** summary judgment on Plaintiff J.W. Sturm's claim of disability discrimination under Cal. Civ. Code § 54.3 to the extent it applies to failure to make reasonable accommodations in handicapped parking.  It otherwise **GRANTS** summary judgment on Plaintiffs' claims under Cal. Civ. Code § 54.3 regarding ramps and handrails.

**B.**   **Plaintiffs' Claims of Race Discrimination**

Plaintiffs' Second and Fifth Claims assert race discrimination under FHAA, 42 U.S.C. § 3604 and Unruh, Cal. Civ. Code § 51.  Plaintiffs assert that the African American plaintiffs were denied "full and equal accommodations" based on their race and were the target of "derogatory comments."  (Compl. ¶¶ 30, 51.)

**1.  Denial of Equal Accommodations to African Americans**

The FHAA defines discrimination to include "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."

-22-

42 U.S.C. § 3604(f)(3)(B).  Unruh prohibits nearly identical conduct, requiring "full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  Cal. Civ. Code § 51.[13]  Therefore, the Court addresses these claims together.

"Title VII discrimination analysis applies to Fair Housing Act discrimination claims, permitting a plaintiff to establish a FHA discrimination claim where he or she can demonstrate disparate treatment or disparate impact."  *Harris v. Itzhaki*, 183 F.3d 1043, 1051–52 (9th Cir. 1999).  To bring a claim for disparate treatment, a plaintiff must establish a *prima facie* case by showing:  "(1) plaintiff's rights are protected under the FHA; and (2) as a result of the defendant's discriminatory conduct, plaintiff has suffered a distinct and palpable injury."  *Id.* at 1051.

Members of non-protected classes may sue under the FHA.  "Under the Act, any person harmed by discrimination, *whether or not the target of the discrimination*, can sue to recover for his or her own injury."  *Id.* at 1050.  But the "distinct and palpable injury" to the non-protected class plaintiffs must be due to "the defendant's discriminatory conduct."  *Id.* at 1050 (internal quotation marks omitted).  For example, non-minority members of a housing complex may sue under the FHA if the discriminatory practices injured them by "rob[bing] [the complex] of its racial balance."  *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 111, 99 S. Ct. 1601, 60 L. Ed. 2d 66  (1979).

"Injury is *assumed* once a violation is established."  *Iniestra v. Cliff Warren Investments, Inc.*, 886 F. Supp. 2d 1161, 1166-67 (C.D. Cal. 2012) (citing *Silver Sage Partners, Ltc. v. City of Desert Hot Springs,* 251 F.3d 814, 827 (9th Cir. 2001).  "Even if

---

[13] Defendants contend that Plaintiffs waived this argument by stating under their "Fifth Cause of Action for Violations of the Provisions of the Unruh Civil Rights Act" heading that "Defendants' acts and omissions described herein constitute discriminatory practices in violation of Cal. Civil Code §§[Sic.] 54.3"—which applies only to disability and not to race discrimination.  Because Plaintiffs stated in their heading that they were asserting claims under Cal. Civ. Code § 51 and Unruh, and because they pled facts relating to race discrimination in their complaint, the Court addresses Plaintiffs' claim of race discrimination under Unruh.  The Complaint put Defendants sufficiently on notice of this claim.

some showing were required, it is not onerous.  Such injury may include humiliation, embarrassment, and emotional distress." *Id.*

Plaintiffs present sufficient evidence to establish a genuine issue of material fact regarding the African American plaintiffs' equal access to accommodations at the Aventine and thus a *prima facie* case of discrimination.  J.W. Sturm testified that one manager, Shelley, once "singled out every African American person that was at the pool at the time" and told them "they had to go inside."  (Pl.'s J.W. Sturm Depo. at 38:24-25; 40:1-7.)  S.A. Sturm testified that African Americans were told to leave common areas. (Pl.'s S.A. Sturm Depo. at 149:7-25; 150:1-22.)  Hope Magee attests that African Americans were prevented from using certain parts of the building, such as the business center.  (Pl.'s Hope Magee Depo. at 133:5-13.)  Charles Shaw states that he was routinely asked to leave the gym.  (Pl.'s Charles Shaw Depo. at 32:13-24.)  Paul Robert Person saw Aventine management ask African American children, but not children of other races, to go inside.  (Def.'s Paul Robert Pearson Depo. at 49:13-15.)  Against this backdrop are racially derogatory statements allegedly made by Aventine management from which the Court can infer, for purposes of this motion, that racial animus existed.

Plaintiffs have therefore submitted sufficient evidence to create a material dispute of fact regarding unequal access to accommodations based on race at the Aventine in violation of FHAA, 42 U.S.C. § 3604(f)(3)(B) and Unruh, Cal. Civ. Code § 51.  The Court therefore **DENIES** summary judgment on these claims.

### 2.      Racially Discriminatory Statements in Violation of 42 U.S.C. § 3604(c)

The FHAA states that it shall be unlawful to:

> To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color . . . or an

-24-

intention to make any such preference, limitation, or discrimination.

42 U.S.C.§ 3604(c).[14]   As previously discussed, *supra*, with regard to the disability discrimination claims, HUD's interpreting regulation repeats this language and then states that "[t]he prohibitions in this section shall apply to all written or oral notices or statements by a person engaged in the sale or rental of a dwelling. Written notices and statements include any applications, flyers, brochures, deeds, signs, banners, posters, billboards or any documents used with respect to the sale or rental of a dwelling." 24 C.F.R. 100.75(b).   "A statement violates 42 U.S.C. § 3604(c) if the statement, when heard by an ordinary reader, would conclude that the rule suggests a preference." *Iniestra*, 886 F. Supp. 2d at 1169.

Contrary to Defendants' assertion that 42 U.S.C. § 3604(c) is limited to the initial rental of the apartment, case law establishes that a notice, statement, or advertisement made "with respect to the sale or rental of a dwelling" may be made after the initial rental of the apartment. For example, rules regarding children in the apartment complex fall under 42 U.S.C. § 3604(c).  *Iniestra*, 886 F. Supp. 2d at 1169.  Comments regarding race preferences in rentals made once a plaintiff already lives at the apartment also fall under 42 U.S.C. § 3604(c).  *See Harris*, 183 F.3d at 1048 (holding that overheard comment regarding race preference was actionable under 42 U.S.C. § 3604(c)).

Defendants make much of the requirement that the statement be made with respect "to the sale or rental of a dwelling" and argue that Plaintiffs testified that they were not discriminated against on the basis of race when they *initially* rented the apartment.

---

[14] Defendants argue that Plaintiffs did not assert any racial discrimination claim under 42 U.S.C. § 3604(c) because the claim under § 3604(c) in the Complaint is limited to disability discrimination.  In their opposition to summary judgment, Plaintiffs point to 42 U.S.C § 3604(c) as a basis for their race discrimination claims.  Because Plaintiffs pled facts relating to derogatory comments in their Complaint (Compl. ¶¶ 21, 30), and asserted race discrimination generally under 42 U.S.C § 3604 *et seq.*, the Court concludes that Defendants had sufficient notice of this claim and thus addresses it.

(Reply at 14-16.)  Even if the Court were to accept this assertion, deposition testimony by J.W. Sturm establishes that Aventine management made at least one statement regarding a race preference in regard to renting to African Americans.  (Pl.'s J.W. Sturm Depo. at 35:8-25.)   Plaintiffs have also offered evidence creating a dispute of material fact regarding statements by management regarding African American's use of the common areas, similar to the rules restricting children in *Iniestra*.  *See supra*, at IV.B.1 (citing such evidence).

The Court concludes that there is a genuine dispute of material fact regarding whether Defendants violated 42 U.S.C. § 3604(c)'s prohibition on race discrimination and, on that basis, **DENIES** summary judgment.

## C.  Negligence

Plaintiffs' Sixth Cause of Action is for negligence.  Plaintiffs' negligence claims as stated in the Complaint alleged Defendants' failure to:   (1) "supervise themselves regarding compliance with requirements of federal and state fair housing laws"; (2) "supervise agents and employees regarding compliance with the requirements of federal and state fair housing laws"; and (3) "to operate the Subject Property in conformity with accepted industry custom and standards."  (Compl. ¶ 83.)  In their opposition to summary judgment, Plaintiffs contend only that "Defendants are vicariously liable for their agents' conduct and landlord negligent of discrimination."  (Opp'n at 30.)  Defendants argue in their reply that Plaintiffs have thus failed to oppose their motion for summary judgment on the negligence claim and therefore the Court should grant the motion.

The Court agrees.  Although Plaintiffs are correct that the Fair Housing Act "imposes liability without fault upon the employer in accordance with traditional agency principles," *Meyer v. Holley*, 537 U.S. 280, 282, 123 S. Ct. 824, 154 L. Ed. 2d 753 (2003), Plaintiffs assert that Defendants are vicariously liable for their employees' negligence—thus asserting claims of employee negligence—for the first time in their opposition to summary judgment.  A plaintiff may not raise a new theory of liability for

-26-

the first time in his opposition to summary judgment without amending his complaint. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000); *see also Wasco Prods., Inc. v. Southwall Techs., Inc.,* 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.").[15]

The Court thus **GRANTS** Defendants' motion for summary judgment on Plaintiffs' sixth cause of action for negligence.

**D.    Plaintiffs' Request for Punitive Damages**

Plaintiffs request punitive damages under FHAA for their claims of race discrimination, under FEHA for their claims of disability discrimination, and under Unruh for both race and disability discrimination.  (Compl. ¶¶ 57, 71, 80.)   Despite Defendants' contentions to the contrary, all three statutes permit the award of punitive damages in certain circumstances.  *See* 42 U.S.C. §3613(c)(1) (punitive damages recoverable under FHAA); *Commodore Home Systems, Inc. v. Superior Court*, 32 Cal. 3d 211, 220 (1982) (punitive damages recoverable under FEHA); *Botosan v. Fitzhugh*, 13 F. Supp. 2d 1047, 1052 (S.D. Cal. 1998) (punitive damages recoverable under Unruh).

A plaintiff seeking punitive damages in a fair housing case must establish that the defendants acted with "reckless or callous indifference" for the fair housing rights of others.   *So. Cal. Hous. Rights Ctr. v. Krug*, 564 F. Supp. 2d 1138, 1153 (C.D. Cal. 2007). A finding of reckless indifference "ultimately focus[es] on the actor's state of mind," and requires that the defendant "at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages."  *Kolstad v. Am. Dental*

---

[15] Similarly, Plaintiffs assert a claim of familial status discrimination under Cal. Gov't Code §12955.2 and 42 U.S.C. § 3602(k) for the first time in their opposition to summary judgment.  (Opp'n at 31.)  Defendants correctly point out again that Plaintiffs cannot raise a new claim for the first time in their opposition.  The Court agrees.  *See Coleman*, 232 F.3d at 1292.  Plaintiffs neither asserted such a theory of liability in their Complaint nor pled facts sufficient to place Defendants on notice of the claim in their Complaint.  The Court therefore declines to consider these late-blooming claims.

*Ass'n*, 527 U.S. 526, 535 (1999).  "[I]n general, intentional discrimination is enough to establish punitive damages liability."  *Inland Mediation Bd. v. City of Pomona*, 158 F. Supp. 2d 1120, 1159-60 (C.D. Cal. 2001).

### 1.  Punitive Damages under the FHAA for Racially Discriminatory Statements

"The award of punitive damages under the Fair Housing Act is governed by federal law."  *United States v. Tropic Seas, Inc.*, 887 F. Supp. 1347, 1365 (D. Haw. 1995).  "An owner of housing—and by extension the member of a board of directors of the corporate owner of such housing—may be liable for punitive damages if he or she 'knew of or ratified' a discriminatory act by the owner's agents or the corporation."  *Id.* (citations omitted).  Therefore, when a defendant's employees are allegedly responsible for the discrimination under the FHAA, "[t]he owner's direct participation in the discriminatory practice is not necessary; punitive damages may be awarded where the owner ignored its duties under the law or otherwise engaged in knowledgeable inaction."  *Krug*, 564 F. Supp. 2d at 1153 (internal quotation marks omitted).
Neither party addresses whether the Defendants' engaged in "knowledgeable inaction" regarding a discriminatory act by an "agent" of the Aventine.  Summary judgment is accordingly **DENIED** on Plaintiffs' claim of punitive damages under the FHAA.

### 2.  Punitive Damages under State Law for Racially Discriminatory Statements

To recover punitive damages under California state law when the defendant is a corporation, "the evidence must demonstrate an officer, director or managing agent of Defendant committed, authorized or ratified an act of malice, oppression or fraud to create a genuine issue of material fact on punitive damages."  *Yeager v. Corr. Corp. of Am.*, No. 12-00162, 2013 WL 1903733, *14 (E.D. Cal. May 7, 2013).  "By selecting the term managing agent, and placing it in the same category as 'officer' and 'director' the Legislature intended to limit the class of employees whose exercise of discretion could result in a corporate employer's liability for punitive damages."  *Id.* (internal quotation

marks omitted).  Whether an individual is a "managing agent" depends on the "extent to which they exercise substantial discretionary authority over decisions that ultimately determine corporate policy."  *Id.*

This Court previously concluded that Plaintiffs established a material dispute of fact regarding racially discriminatory statements.  Several unidentified security guards and two managers of the Aventine are the only employees alleged to have made discriminatory statements.  Neither party claims that these individuals are officers or directors of Defendants.  And neither party addresses whether these individuals can be considered "managing agents."  Although it is clear that the security guard could not be deemed a "managing agent," it is less clear on this record what discretionary authority, if any, the two Aventine managers had over corporate policy.  Because Defendants have not established that there is an absence of disputed facts in this regard, the Court **DENIES** summary judgment on Plaintiffs' request for punitive damages under FEHA and Unruh, without prejudice to a motion *in limine* on this subject.

### 3.  Punitive Damages for All Other Claims

Plaintiffs proffer no evidence to create a genuine dispute of material fact as to whether an officer, director, or managing agent of Defendants "committed, authorized or ratified an act of malice, oppression or fraud" in regard to their other race and disability claims.  Plaintiffs thus fail to provide any evidence showing that there is a genuine issue for trial.  *See Celotex*, 477 U.S. at 324.  ("Rule 56(c) requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.") (quotation marks omitted); *see also United States v. Tropic Seas, Inc.*, 887 F. Supp. 1347, 1365-66 (D. Haw. 1995) (denying summary judgment on the issue of punitive damages in fair housing case where  "allegations are supported by various affidavits and documentation authenticated by affidavits.").

In conclusion, the Court finds that Plaintiffs fail to raise a triable issue of fact as to entitlement to punitive damages on all claims except for their claim under 42 U.S.C.§ 3604(c) regarding racially discriminatory statements.  The Court therefore **GRANTS** Defendant's Motion as to punitive damages in part and **DENIES** it in part.

**V.**

**CONCLUSION**

In light of the foregoing, the Court orders the following:

(1)    Summary Judgment is **GRANTED** on Plaintiffs' disability discrimination claims as to ramps and handrails under FHAA, 42 U.S.C. § 3604(f)(3)(C); FEHA, Cal. Gov't Code § 12955; and Unruh, Cal. Civ. Code § 54.3.

(2)    Summary Judgment is **GRANTED** on Plaintiff M.M Moore's claim regarding handicapped parking under FHAA, 42 U.S.C. § 3604(f)(3)(B), FEHA, Cal. Gov't Code §12955; and Unruh, Cal. Civ. Code § 54.3.

(3)    Summary Judgment is **GRANTED** on Plaintiffs' disability discrimination claims under FHAA, 42 U.S.C. § 3604(c) and FEHA, Cal. Gov't Code § 12955(c).

(4)    Summary Judgment is **GRANTED** on Plaintiffs' claims of negligence.

(5)    Summary Judgment is **GRANTED** on Plaintiffs' request for punitive damages in regard to all claims except those in violation of FHAA, 42 U.S.C.§ 3604(c) and FEHA, Cal. Gov't Code § 12955(c) regarding racially discriminatory statements.

(6)    Summary Judgment is **DENIED** in all other respects.

(7)    Within 15 days from the date of this Order, Plaintiffs shall file a brief explaining why Plaintiffs other than M.M. Moore and J.W. Sturm have standing to assert claims for disability discrimination under FHAA, 42 U.S.C. § 3604(f)(3)(B); FEHA, Cal. Gov't Code §12955; and Unruh, Cal. Civ. Code § 54.3, regarding the repair of handrails and the alleged failure to

accommodate Plaintiff J.W. Sturm's request for handicapped parking, and Plaintiff M.M. Moore's claim of disability discrimination under FHAA 42 U.S.C. § 3604(f)(3)(A); FEHA, Cal. Gov't Code §12955; and Unruh, Cal. Civ. Code § 54.3 (denial of Plaintiff M.M. Moore's  request to pay for modifications to common areas).  The Sturm Plaintiffs shall also explain why they have standing to assert claims of race discrimination under FHAA, 42 U.S.C. §§ 3604(c), 3604(f)(3)(B), and Unruh, Cal. Civ. Code § 51. Within 15 days after Plaintiffs file their brief regarding standing, Defendants shall file their response.  Briefs shall be no more than 15 pages in length.

(8)   The Court modifies the Scheduling and Case Management Order [Doc. # 16] so that the due date for all pretrial documents is continued from October 1, 2013 to October 15, 2013.  Any motions *in limine* are due on October 8, 2013, and any oppositions to the motions *in limine* are due on October 15, 2013.   Except as modified herein, the parties shall comply with the Scheduling and Case Management Order.

**IT IS SO ORDERED.**

DATED:  September 30, 2013

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE