UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 12-7305-DMG (AGRx) | Date | November 6, 2013 |
| Title | *Julia Worth Sturm, et al. v. Davlyn Investments, Inc., et al.* | Page | 1 of 10 |

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| VALENCIA VALLERY | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |

**Proceedings: [IN CHAMBERS] ORDER RE DEFENDANTS' MOTIONS *IN LIMINE*
[Doc. ## 51-54]**

On October 8, 2013, Defendants Davlyn Investments and DLGP Aventine, LLC filed four motions *in limine*. [Doc. ## 51-54.] Plaintiffs filed their oppositions on October 15, 2013. [Doc. ## 57-60.] The Court held a hearing on the motions on October 22, 2013. Having considered the parties' written submissions and arguments on the motions, the Court hereby renders its decision.

**A.     COMPLIANCE WITH LOCAL RULE 7-3**

The parties dispute whether Defendants complied with Local Rule 7-3. In each motion *in limine*, Defendants contend that "counsel attempted to meet and confer with Plaintiffs' attorneys prior to filing this motion; however, they were unable to resolve the issues . . . without court intervention." (MIL No. 1-4, at 2 [Doc. ## 51-54].) Plaintiffs assert that Defendants failed to meet and confer and therefore all of Defendants' motions *in limine* should be denied and sanctions should be imposed.

Plaintiffs specifically allege: "Contrary to Defendants' assertion in the moving papers, this meet and confer effort never occurred because Defendants only belatedly sent an email after business hours on Friday, October 4, 2013, inquiring as to whether Plaintiffs would stipulate to Defendants' proposed filing of eleven motions in limine. After counsel for Plaintiffs invited Defendants to engage in the court-ordered meet and confer process and to provide the basis for their proposed motions, rather than engage in a good faith meet and confer discussions, Defendants proceeded to file the motions in limine with the Court." (Pl's Opp'n MIL No. 1 at 5-6.)

The Court notes that this is not the first time that Defendants have failed to comply with Local Rule 7-3. *See* Order re Defendants' Motion for Summary Judgment at 2 n.2, filed September 30, 2013 ("MSJ Order") [Doc. # 49]. In its MSJ Order, the Court gave both sides fair

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 12-7305-DMG (AGRx) | Date | November 6, 2013 |
| Title | *Julia Worth Sturm, et al. v. Davlyn Investments, Inc., et al.* | Page | 2 of 10 |

warning: "The Court admonishes both sides . . . that any future non-compliance with the Local Rules *shall* result in the imposition of monetary sanctions." *Id*. (emphasis added).

Given the truncated briefing schedule imposed by the Court in its MSJ Order, it is understandable that Defendants did not meet and confer at least seven days prior to filing their motions *in limine*. Nonetheless, contacting opposing counsel and *attempting* to schedule a meet and confer is not tantamount to *actually* conducting a meaningful meeting of counsel as contemplated by Local Rule 7-3. At the hearing on the pending motions, defense counsel clarified that, although the parties were not able to meet and confer prior to the filing of the motions as is required by Local Rule 7-3, they did do so after the motions were filed and were unable to come to an agreement that would have resulted in the withdrawal of any of the motions. Defense counsel's explanation demonstrates substantial compliance with the spirit of Local Rule 7-3, but the Court urges counsel to take greater care in the future to comply with the letter of the rule as well. In the interests of justice and the efficient management of the upcoming trial, the Court declines to dismiss Defendants' motions *in limine*, which are now fully briefed and ready for decision.

B. **DEFENDANTS' MOTION *IN LIMINE* NO. 1**

Defendants move to exclude all "evidence, references to evidence, testimony or argument" relating to a statement or conduct by security guards assigned to the Aventine. (MIL No. 1 at 2 [Doc. # 51].) Defendants argue that such evidence is inadmissible as evidence of (1) discriminatory statements by Defendants and (2) Defendants' liability for punitive damages because the security guards are independent contractors, and therefore Defendants cannot be held liable for their actions. Defendants assert that any evidence relating to the security guards is irrelevant under Federal Rule of Evidence 402 and is prejudicial and unduly confusing under Federal Rule of Evidence 403, and on that basis should be excluded.

1. **Admissibility of Security Guards' Statements and Conduct as Evidence of Discrimination**

Plaintiffs do not dispute Defendants' assertion that the security guards are independent contractors. Instead, they argue that evidence at trial will establish that the security guards acted as agents for Defendants and therefore Defendants are vicariously liable for their actions. Plaintiffs do not offer any evidence in response to Defendants' current motion, however, from which the Court can infer that the security guards acted as Defendants' agents.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 12-7305-DMG (AGRx) | Date | November 6, 2013 |
| Title | *Julia Worth Sturm, et al. v. Davlyn Investments, Inc., et al.* | Page | 3 of 10 |

"The principal [in a Fair Housing case] is liable for the acts and negligence of the agent in the course of his employment, although he did not authorize or did not know of the acts complained of." *Meyer v. Holley*, 537 U.S. 280, 286, 123 S. Ct. 824, 829, 154 L. Ed. 2d 753 (2003). Even though the security guards are independent contractors, they may still be considered agents in Fair Housing Act cases under certain circumstances. *See, e.g.*, *Heights Cmty. Cong. v. Hilltop Realty, Inc.*, 774 F.2d 135, 141 (6th Cir. 1985) (noting that the argument that independent contractors may not be agents "has consistently been rejected in Fair Housing Act cases.") (citing *Green v. Century 21,* 740 F.2d 460, 465 (6th Cir. 1984); *Northside Realty Associates, Inc. v. United States*, 605 F.2d 1348, 1353-54 (5th Cir. 1979) (abrogated on other grounds)). A defendant in a Fair Housing case may be held vicariously liable for the actions of an independent contractor if a court finds that an agency relationship exists. *City of Chicago v. Matchmaker Real Estate Sales Ctr., Inc.*, 982 F.2d 1086, 1097-98 (7th Cir. 1992) (collecting cases). Whether an agency relationship exists for purposes of the Fair Housing Act is a question of federal law. *Id.* (citing *Northside Realty Associates, Inc.*, 605 F.2d at 1354 n. 13.) Although the Ninth Circuit has not directly weighed in on this issue in the context of the Fair Housing Act, it has held that "[u]nlike employees, independent contractors are not ordinarily agents." *United States v. Bonds*, 608 F.3d 495, 505 (9th Cir. 2010). Yet, "a finding that a[n individual] is an independent contractor does not *preclude* a finding that the a[n individual] is also an agent for some purposes." *Bonds*, 608 F.3d at 505 (citing *Dearborn v. Mar Ship Operations, Inc.*, 113 F.3d 995, 998 n. 3 (9th Cir. 1997) ("[A]n independent contractor . . . may be an agent" when he acts "subject to the principal's overall control and direction.").

The Supreme Court has opined that the Fair Housing Act imposes "liability without fault upon the employer in accordance with traditional agency principles . . . ." *Meyer*, 537 U.S. at 282. "To ascertain whether an agency relationship exists [in a case involving the Fair Housing Act], the federal courts look to the Restatement . . . of Agency . . . ." *Marya v. Slakey*, 190 F. Supp. 2d 95, 100 (D. Mass. 2001). "Generally, for an agency relationship to exist, a principal must consent to the agent acting on his behalf and subject to his control, and the agent must consent to act for the principal." *Holley v. Crank*, 400 F.3d 667, 673 (9th Cir. 2005). In addition, vicarious liability can exist even in the absence of an actual agency relationship if the principal acted in a way that would make it reasonable for a third party to believe that the agent is authorized to act for the principal—*i.e.* acted with apparent authority. Restatement (Third) of Agency § 2.03 (2006); *see also Inland Mediation Bd. v. City of Pomona*, 158 F. Supp. 2d 1120, 1139 (C.D. Cal. 2001) (holding in a Fair Housing case that "vicarious liability may rest upon an actual agency relationship or an apparent agency relationship."); *United States v. Balistrieri*, 981 F.2d 916, 930 (7th Cir. 1992) (agent acting with apparent authority liable for discriminatory acts under the Fair Housing Act). Finally, by ratifying an act, a principal is liable to the extent he would have been "had the act been that of an agent acting with actual authority." Restatement

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 12-7305-DMG (AGRx)** | Date | November 6, 2013 |
| Title | ***Julia Worth Sturm, et al. v. Davlyn Investments, Inc., et al.*** | Page | 4 of 10 |

(Third) of Agency § 4; *see also Bradley v. John M. Brabham Agency, Inc.*, 463 F. Supp. 27, 32 (D.S.C. 1978) (considering ratification and agent/principal relationship in context of Fair Housing Act under federal law).

A principal ratifies an act by manifesting assent explicitly or through conduct that justifies a "reasonable assumption that the person so consents." Restatement (Third) of Agency § 4.01; *see also Bradley*, 463 F. Supp. at 32 (ratification based on overt approval of actions). For ratification to occur, the actor (here, the security guards) must have been acting or purporting to act as an agent on the principal's behalf. Restatement (Third) of Agency § 4.03. "This limits the range of ratifiable acts to those done by an actor *who is an agent or who is not an agent but pretends to be*." *Id.* at § 4.01 (emphasis added). In addition, the person ratifying the act must have had the capacity to ratify the act as a principal. *Id.* at § 3.04(1). The burden of establishing ratification is on the party attempting to show ratification. *Id.* at § 4.06.

"[T]he question of agency should be submitted to the jury *unless the facts are clearly insufficient to establish agency* or there is no dispute as to the underlying facts." *Harris v. Itzhaki*, 183 F.3d 1043, 1054 (9th Cir. 1999). Defendants argue that they lacked control over the security guards, relying on a declaration submitted in support of their motion *in limine* by Michael P. Booth, President of Davlyn, detailing the vendor's control over the security guards. Plaintiffs argue that there is an issue of fact for trial, and have presented some slim evidence that management knew of discriminatory conduct by security guards but did nothing to curb it. Hope Magee reported racially discriminatory conduct by security guards to "management." (Okojie Decl. ¶ 7, Ex. D ("Pl's Paulisha Shaw Depo.") at 37: 19-25 [Doc. # 37-8].) In addition, J.M. Sturm complained to Regional Manager Geoff Goldfarb about "mistreatment of African Americans," but her complaints were non-specific as to any conduct by the security guards and it is unclear what authority Goldfarb had to ratify acts on Defendants' behalf. (Okojie Decl. ¶ 4, Ex. A ("Pl's J.M. Sturm Depo.") at 77:14-22 [Doc. # 37-4]; Okojie Decl. ¶ 11, Ex. G ("Pl's Alfonzia Jason Moore Depo.") at 81:22-23 [Doc. # 37-11].)[1]

Thus, there is a question of fact for trial as to whether, by ratification, the security guards were Defendants' agents. *See Harris v. Itzhaki*, 183 F.3d 1043, 1054 (9th Cir. 1999) ("[T]he question of agency should be submitted to the jury unless the facts are clearly insufficient to establish agency or there is no dispute as to the underlying facts."). If they are agents, Defendants may be held liable for their agents' discriminatory actions.

---

[1] Plaintiffs' evidence also consists of a letter from Julia and Sandra Sturm to managers Isaac Montealegre and Shelly Trout, but this letter discusses their concerns with Monteallegre and Trout's treatment of African Americans—it does not discuss actions by security guards. (Okojie Decl. ¶ 4, Ex. A at 38 [Doc. # 37-4].)

| | | |
|---|---|---|
| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk VV |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 12-7305-DMG (AGRx) | Date | November 6, 2013 |
| Title | *Julia Worth Sturm, et al. v. Davlyn Investments, Inc., et al.* | Page | 5 of 10 |

For the foregoing reasons, the Defendants' motion *in limine* no. 1 is **DENIED** without prejudice to it being renewed if Plaintiffs fail to present evidence at trial demonstrating that Defendants exercised control over or ratified the actions of the security guards. Defendants may also file a motion for summary adjudication by no later than November 29, 2014 on the issue of the existence of an agency relationship between the security guards and Defendants.

### 2. Admissibility of Security Guards' Statements and Conduct as Evidence of Entitlement to Punitive Damages

A plaintiff seeking punitive damages under the Fair Housing Act must show that the defendants acted with reckless or callous indifference for the fair housing rights of others. *Southern California Hous. Rights Ctr. v. Krug*, 564 F. Supp. 2d 1138, 1153 (C.D. Cal. 2007) (citing *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906-07 (9th Cir. 2002)). "The [apartment complex] owner's direct participation in the discriminatory practice is not necessary; punitive damages may be awarded where the owner ignored its duties under the law or otherwise engaged in knowledgeable inaction. Nor must the conduct be outrageous to warrant punitive damages." *Id.* (internal quotation marks omitted) Yet, here too, Plaintiffs must establish the existence of an agency relationship between the discriminatory actor and Defendants before they can seek punitive damages based upon the agent's conduct. *Id.* (citing *Miller v. Apartments & Homes of New Jersey, Inc.*, 646 F.2d 101, 111 (3d Cir. 1981) ("We hold an employer liable for punitive damages for the conduct of his *agent* [under the Fair Housing Act] when the record shows that he was, by action or knowledgeable inaction, involved in the wrongdoing . . . or that he has authorized, ratified, or fostered the acts complained of." (citations omitted).

To recover punitive damages under California state law when the defendant is a corporation, "the evidence must demonstrate an officer, director or managing agent of Defendant committed, authorized or ratified an act of malice, oppression or fraud to create a genuine issue of material fact on punitive damages." *Yeager v. Corr. Corp. of Am.*, No. 12-00162, 2013 WL 1903733, *14 (E.D. Cal. May 7, 2013). "By selecting the term managing agent, and placing it in the same category as 'officer' and 'director' the Legislature intended to limit the class of employees whose exercise of discretion could result in a corporate employer's liability for punitive damages." *Id.* (internal quotation marks omitted). Whether an individual is a "managing agent" depends on the "extent to which they exercise substantial discretionary authority over decisions that ultimately determine corporate policy." *Id.* This Court previously held that "it is clear that the security guard could not be deemed a 'managing agent.'" (Order at 29.) Because evidence at trial could establish that an "officer, director or managing agent of Defendant[s] . . . ratified" a security guard's actions, Defendants could still be held liable for punitive damages under state law.

| | | |
|---|---|---|
| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk VV |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 12-7305-DMG (AGRx) | Date | November 6, 2013 |
| Title | *Julia Worth Sturm, et al. v. Davlyn Investments, Inc., et al.* | Page | 6 of 10 |

Accordingly, the Court **DENIES** Defendants' motion *in limine* no. 1 to the extent it seeks to limit evidence of the security guards' statements for purposes of the imposition of punitive damages. As above, this motion is denied without prejudice to it being renewed if Plaintiffs fail to present evidence at trial demonstrating that Defendants exercised control over or ratified the actions of the security guards. Defendants may also file a motion for summary adjudication by no later than November 29, 2014 on the issue of the existence of an agency relationship between the security guards and Defendants.

C. **DEFENDANT'S MOTION *IN LIMINE* No. 2**

Defendants next move to exclude all "evidence, references to evidence, testimony or argument" relating to a statement or conduct by Isaac Montealegre, Aventine apartment manager, and Shelly Trout, Aventine leasing consultant, in support of Plaintiffs' punitive damages claim. Defendants argue that neither Montealegre nor Trout is "an officer, manager, or managing agent" of Defendants or the Aventine and that, therefore, Defendants cannot be held liable for their actions as a matter of law.

**1. Punitive Damages Under Federal Law**

A defendant may be liable for punitive damages under the Fair Housing Act where an "owner" ignored its duties under the law or otherwise engaged in knowledgeable inaction regarding its agent's conduct. *Fair Hous. of Marin*, 285 F.3d at 906-07; *Miller v. Apartments*, 646 F.2d at 111. A principal is subject to liability for punitive damages to a party harmed by an agent's conduct when "the agent's conduct, if that of a principal, would subject the principal to tort liability." Restatement (Third) of Agency § 7.03(1)(a)(ii). In general, "notice of a fact that an agent knows or has reason to know is imputed to the principal." Restatement (Third) Of Agency § 1.04.

As stated above, Plaintiffs have presented some evidence that J.M. Sturm complained to Regional Manager Geoff Goldfarb about "mistreatment of African Americans" and thus he had knowledge of some kind of discriminatory conduct. (Pl's J.M. Sturm Depo. at 77:14-22; Pl's Alfonzia Jason Moore Depo. at 81:22-23.) The parties do not dispute that Goldfarb is Defendants' agent. Making all reasonable inferences in favor of Plaintiffs, the Court **DENIES** Defendants' motion *in limine* no. 2 with regard to punitive damages under federal law.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 12-7305-DMG (AGRx) | Date | November 6, 2013 |
| Title | *Julia Worth Sturm, et al. v. Davlyn Investments, Inc., et al.* | Page | 7 of 10 |

### 2. Punitive Damages Under State Law

Defendants may be liable for punitive damages under state law where "an officer, director or managing agent of Defendant . . . ratified an act of malice, oppression or fraud." *Yeager*, 2013 WL 1903733, *14. "By selecting the term 'managing agent,' and placing it in the same category as 'officer' and 'director' the Legislature intended to limit the class of employees whose exercise of discretion could result in a corporate employer's liability for punitive damages." *Id.* (internal quotation marks omitted). Whether an individual is a "managing agent" depends on the "extent to which they exercise substantial discretionary authority over decisions that ultimately determine corporate policy." *Id.*

Plaintiffs present no evidence regarding Montealegre and Trout's level of discretion and whether they are "managing agents." (See Opp'n to MIL No. 2 [Doc. # 58].) Instead, they argue that Defendants have a non-delegable duty in regard to the actions committed by their agents. (*Id.* at 8.) This theory of liability has been rejected in favor of applying traditional agency principals in Fair Housing cases. *Meyer*, 537 U.S. at 291-92. Defendants, on the other hand, also do not present evidence relating to Montealegre and Trout's level of discretion and whether they are "managing agents." Again, the Court must make all reasonable inferences in favor of Plaintiffs. The Court therefore **DENIES** Defendants' motion *in limine* no. 2 with regard to punitive damages under state law.

### D. DEFENDANTS' MOTION *IN LIMINE* No. 3

Defendants move to preclude any evidence or testimony relating to Defendants' financial condition, net worth, and profits unless and until Plaintiffs prove a *prima facie* case of liability for punitive damages. Defendants rely on Federal Rule of Evidence 402 ("irrelevant evidence is not admissible"), 403 ("exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice . . . ."), and California Civil Code section 3295(d).[2]

In their joint Proposed Final Pretrial Conference Order, the parties stipulate to bifurcate the trial on the issue of punitive damages, deciding liability and entitlement to punitive damages in the first phase and the amount of punitive damages, if any, in the second phase. (Proposed

---

[2] Section 3295(d) provides: "The court shall, on application of any defendant, preclude the admission of evidence of that defendant's profits or financial condition until after the trier of fact returns a verdict for plaintiff awarding actual damages and finds that a defendant is guilty of malice, oppression, or fraud in accordance with Section 3294. Evidence of profit and financial condition shall be admissible only as to the defendant or defendants found to be liable to the plaintiff and to be guilty of malice, oppression, or fraud." Cal. Civ. Code § 3295(d).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 12-7305-DMG (AGRx) | Date | November 6, 2013 |
| Title | *Julia Worth Sturm, et al. v. Davlyn Investments, Inc., et al.* | Page | 8 of 10 |

Final Pretrial Conference Order at 28 [Doc. # 69].) Despite this stipulation, Plaintiffs object to Defendants' motion *in limine* because they argue that Defendants' financial resources are relevant to any "undue burden" defense for failure to make reasonable accommodations. (Opp'n to MIL #3, at 7 [Doc. # 59].)

Evidence of financial resources is relevant to a reasonable accommodation claim to the extent that a Defendant argues the accommodation would be an "undue burden" for financial reasons. *See Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1157 (9th Cir. 2003) ("[A]n accommodation is reasonable under the FHAA when it imposes no fundamental alteration in the nature of the program or undue financial or administrative burdens.") As Plaintiffs acknowledge, Defendants have not previously raised a defense based on undue burden. (Opp'n to MIL # 3, at 5.) Nor do Defendants claim that they will raise the defense at trial in the joint Proposed Final Pretrial Conference Order. (Proposed Final Pretrial Conference Order at 11-26.)

Evidence of Defendants' financial condition is irrelevant to liability for punitive damages and would be unfairly prejudicial at the liability phase. *See Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 539, 119 S. Ct. 2118, 2126, 144 L. Ed. 2d 494 (1999) ("Where there is no evidence that gives rise to an inference of actual malice or conduct sufficiently outrageous to be deemed equivalent to actual malice, the trial court need not, and indeed should not, submit the issue of punitive damages to the jury.") (internal quotation marks and alterations omitted). If Defendants do not raise an undue burden defense, then any information regarding their financial situation will not be relevant in the first stage of trial.

Accordingly, Defendants' motion *in limine* no. 3 is **GRANTED**. If Defendants raise an undue burden defense based on finances, however, then evidence regarding Defendants' finances will be permitted in the first stage of trial.

E.     **DEFENDANTS' MOTION *IN LIMINE* No. 4**

Defendants move to exclude any and all expert testimony because Plaintiffs failed to make an expert witness disclosure pursuant to Federal Rules of Evidence 702, 703, and 705, and Federal Rule of Civil Procedure 26(a)(2)(A-C), which requires disclosures of expert witnesses.[3]

---

[3] Federal Rule of Evidence 702, titled "Testimony by Expert Witness" states: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data;(c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 12-7305-DMG (AGRx) | Date | November 6, 2013 |
| Title | *Julia Worth Sturm, et al. v. Davlyn Investments, Inc., et al.* | Page | 9 of 10 |

Defendants assert that any expert testimony at trial would be irrelevant and prejudicial under Federal Rules of Evidence 402 and 403.

Plaintiffs argue that they should be allowed to offer testimony of "non-retained expert" physicians at trial and any failure to disclose these expert witnesses is harmless and non-prejudicial. They admit that they did not previously disclose these expert witnesses, but included them in the joint witness list. (Opp'n to MIL No. 4, at 4 [Doc. # 5].)

Under Rule 26(a)(2)(A), "a party must disclose to the other parties the identity of any witness it may use at trial to present [expert testimony]." Such a disclosure must be made at least 90 days before trial. Fed. R. Civ. P. 26(a)(2)(D). If a party specifically retains the expert to give expert testimony in the case, Rule 26(a)(2)(B) further requires the expert disclosure to include an expert report. The text of Rule 26(a)(2)(A)'s disclosure requirement applies to all witnesses providing expert testimony, such as treating physicians. *See Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004) ("even treating physicians . . . must be designated as experts if they are to provide expert testimony."). If the expert is a treating physician, a written report is not required if her opinions were formed during treatment. *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011) ("[W]e join those circuits that have addressed the issue and hold that a treating physician is only exempt from Rule 26(a)(2)(B)'s written report requirement to the extent that his opinions were formed during the course of treatment."). Federal Rule of Civil Procedure 37(c)(1) states that failure to disclose a witness prevents a party from using that witness at trial unless "the failure was substantially justified or is harmless." *See also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

Because Plaintiffs, by their own admission, failed to timely make an expert witness disclosure of the treating physicians, they have violated Federal Rule of Civil Procedure 26(a)(2)(A). Plaintiffs contend that this failure was harmless, however, because they identified the treating physicians in their interrogatories and the Court granted Defendants' *ex parte* application for an extension of time to depose the physicians. (Opp'n to MIL No. 4 at 4-5 [Doc. # 60]; July 12, 2013 Order [Doc. # 27].) Plaintiffs also allege that during discovery they provided Defendants "all available medical notes regarding their medical treatment and defendants have subpoenaed and obtained plaintiffs' medical records." (*Id.* at 5.)

---

methods to the facts of the case." Federal Rule of Evidence 703 discusses the bases of an expert's testimony, and Rule 705 relates to the requirement to disclose facts or data underlying an expert's opinion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 12-7305-DMG (AGRx) | Date | November 6, 2013 |
| Title | *Julia Worth Sturm, et al. v. Davlyn Investments, Inc., et al.* | Page | 10 of 10 |

Due to these prior disclosures to Defendants during discovery and the fact that Defendants had the opportunity to depose the treating physicians (but apparently chose not to), the Court concludes that Defendants will not be unfairly prejudiced by allowing Plaintiffs to present the testimony of treating physicians at trial. Moreover, because the proposed witnesses are treating physicians, Plaintiffs were not required to submit expert reports. *Goodman*, 644 F.3d at 826. The Court concludes the error to include the treating physicians in Plaintiffs' expert witness disclosure is harmless.

The Court therefore **DENIES** Defendants' motion *in limine* no. 4, but Defendants will be permitted to depose Plaintiffs' treating physicians by no later than January 10, 2014. Defendants may disclose their own expert and provide an expert report by December 10, 2013, and Plaintiffs may depose such expert by January 10, 2014.

**IT IS SO ORDERED.**