UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIA WORTH STURM, et al., | ) Case No. CV 12-07305 DMG (AGRx) |
| Plaintiffs, | ) **ORDER RE DEFENDANTS'** |
| v. | ) **SUPPLEMENTAL MOTION FOR** |
| DAVLYN INVESTMENTS, INC., et al., | ) **SUMMARY JUDGMENT [DOC. # 86]** |
| Defendants. | ) |

This matter is before the Court on the Supplemental Motion for Summary Judgment filed by Defendants Davlyn Investments, Inc. and DLGP Aventine, LLC. [Doc. # 86.] On January 3, 2014, the Court held a hearing on the matter and ordered supplemental briefing. [Doc. # 92.] For the reasons discussed below, Defendants' Supplemental Motion for Summary Judgment is **DENIED**.

## I.
## PROCEDURAL HISTORY

On August 24, 2012, Plaintiffs filed a Complaint against Defendants Davlyn Investments and DLGP Aventine LLC. [Doc. # 1.] On July 23, 2013, Defendants filed a Motion for Summary Judgment. [Doc. # 31.] On September 30, 2013, the Court granted in part and denied in part Defendants' Motion for Summary Judgment. [Doc. # 49.]

On October 22, 2013, the Court held a final pretrial conference. At that conference, Plaintiffs' counsel clarified that Plaintiffs intend to pursue a retaliation claim under 42 U.S.C. § 3617 of the Fair Housing Amendments Act of 1988 ("FHA"). Defense Counsel responded that it was unaware that Plaintiffs were raising a retaliation claim because it was not one of the enumerated causes of action in the Complaint, nor was it included in the proposed Final Pretrial Conference Order. The Court therefore permitted Defendants to file a supplemental motion for summary judgment regarding Plaintiffs' retaliation claims. [Doc. # 76.]

On December 2, 2013, Defendants filed their Supplemental Motion for Summary Judgment on Plaintiffs' retaliation claims under 42 U.S.C. § 3617. [Doc. # 86.] On December 17, 2013, Plaintiffs filed an opposition. [Doc. # 88.] On December 20, 2013, Defendants filed a reply. [Doc. # 89.]

On January 3, 2013, the Court granted Plaintiffs leave to file supplemental declarations regarding the timing of the Plaintiffs' complaints and the "*first* eviction notice for each family." [Doc. # 92]. Plaintiffs timely filed supplemental affidavits on January 10, 2014. [Doc. # 94.] Defendants filed a response on January 17, 2013. [Doc. # 95.]

## II.
## FACTUAL BACKGROUND[1]

The Court's September 30, 2013 Order sets forth the factual background of this case in detail. [Doc. # 49.] The Court therefore recites only those facts material to Plaintiffs' retaliation claims.

---

[1] As it must on this motion for summary judgment, the Court sets forth the material undisputed facts and views all reasonable inferences to be drawn from them in the light most favorable to Plaintiffs, the non-moving parties. The Court also notes that both sides make numerous evidentiary objections. At this time, the Court addresses only those objections to evidence it deems material to the instant motion.

### A.     Facts Material to the Sturm Family's Retaliation Claims

The Sturm family lived at the Aventine from March 2011 to September 16, 2011. (Affidavit of J.W. Sturm ¶¶ 1, 18 [Doc. # 94].) During this time, they made various requests for disability accommodations, such as handrails that did not shake, handicapped parking, and ramps. (Declaration of Odion L. Okojie ¶ 4, Ex. A ("J.W. Sturm Depo.") at 73:1-22; 201:2-7 [Doc. # 37-5].) Sandra Ashley Sturm complained about being asked by management to spy on African American neighbors. (Supplemental Declaration of Odion L. Okojie ¶ 6, Exh. B ("Sandra Ashley Sturm Depo.") at 23:25 [Doc. # 87].) J.W. Sturm testified that she was never asked to "do anything regarding African Americans." (Supplemental Declaration of Katherine A. Tatikian, Exh A ("J.W. Sturm Depo.") at 84:7-10 [Doc. # 86-4].)

Sometime during the summer of 2011, the Sturms complained to Regional Manager Geoff Goldfarb for the first time about "mistreatment directed at the African American residents as well as the failure by Defendants to accommodate the handicapped tenants at the Aventine." (J.W. Sturm Aff. ¶¶ 8, 10.) They also complained that managers had "deliberately refused to fix several defective items inside our apartment" and Goldfarb informed the Sturms that they did not need to pay rent until their complaints were resolved. (*Id.* ¶¶ 13-15.) During the same meeting, the Sturms told Goldfarb that they had asked management to be let out of their lease but their requests were refused. (*Id.* ¶ 13.)

On August 19, 2011, Defendants filed an eviction action against the Sturms. (J.W. Sturm Aff. ¶ 16.)[2] Sometime shortly after September 16, 2011, the Sturms were removed

---

[2] This Court's January 3, 2014 Order granted Plaintiffs' counsel leave to submit supplemental declarations regarding the "dates of the *first* eviction notice for each family." [Doc. # 92.] The supplemental affidavit of J.W. Sturm only mentions the August 19, 2011 eviction notice. [Doc. # 94.] Defendants argue that Plaintiffs violated the Court's order because J.W. Sturm testified in her deposition that she received "three-day notices," which were taped to her door. (Supplemental Declaration of Katherine A. Tatikian, Exh A ("J.W. Sturm Depo.") at A-33-34 [Doc. # 86-4].) It is unclear when these

-3-

from their apartment. (*Id.* ¶ 18.) Once the Sturms "became aware of the eviction lawsuit"—it is not clear when this was—they offered to pay outstanding rent but the offer was refused "because the manager, Jenny Pomboza, told us that Defendants just want us out because we complained too much." (*Id.* ¶ 19.)

### B. Facts Material to the Magee Family's Retaliation Claims

The Magee family lived at the Aventine between September 2009 and November 25, 2011. (Affidavit of Hope Magee ¶¶ 1, 23 [Doc. # 94].) Sometime during the last year of their tenancy, the Magee family began lodging various complaints with management, the Los Angeles Housing Authority, and the United States Department of Housing and Urban Development regarding "mistreatment" of African Americans. (*Id.* ¶¶ 12-13.) At some point, the Magee family also complained to management regarding lack of accommodations for their disabled neighbors. (Okojie Decl. ¶ 6, Ex. C ("Pl. Hope Magee Depo.") 149:1-19 [Doc. # 37-7].) Plaintiffs fail to provide any time frame for the latter complaints.

On February 28, 2010, the Aventine issued the Magee family a "three-day notice to perform conditions and/or covenants or quit." (Tatikian Supp. Decl. ¶ 6, Exh. E ("Hope Magee Depo") at 91 [Doc. # 86-4]; *id.* ¶ 17, Exh. P [Doc. # 86-9].)[3] The notice informed the Magee family that they were violating their lease, which prohibited "drinking,

---

notices were served, or how many there were. Defendants do not present any facts to suggest that these notices were not related to the August 2011 eviction, or any indication of their timing.

[3] Plaintiffs object that anything in regard to the Magees' notices of eviction are "disputed and irrelevant" because the Court limited the issues in the instant motion to retaliation and an agency relationship between the security guards and Defendants. (Plaintiffs' Statement of Genuine Issues at 39 [Doc. 88-1].) Yet, Plaintiffs themselves argue that the allegedly false accusations in the eviction notices are evidence of retaliation against the Magee family. (Opp'n at 4-5 (discussing "false accusations").) They also argue that these "bogus allegations" were never brought to the attention of Hope Magee. (*Id.*) Regardless of whether she did or did not receive the notices, they are relevant to show the basis for the eviction proceedings against the Magees. *See infra* III.C. Plaintiffs' objection is overruled.

loitering, disturbing the peace, and/or destroying the property," and listed six different incidents that allegedly violated the terms of the lease. (*Id.*) Sometime in March 2010, Defendants served another "Three-Day Notice to Perform Conditions and/or Covenants or Quit" on the Magees. (Tatikian Decl., Exh E ("Hope Magee Depo.") at E-91, P [Doc. # 86-4].) It is unclear from the record what became of these notices.[4]

Around August 2011, manager Isaac Montealegre told Hope Magee that Defendants would not renew her lease "as a result of [her] complaints" about "failure to reasonably accommodate disabled tenants" and "racial harassment and discrimination." (Hope Magee Aff. ¶ 14.)

On October 24, 2011, Defendants filed an eviction action against the Magees. (Hope Magee Aff. ¶ 17, Exh. E.) The Magees moved out of the Aventine on November 25, 2011, because manager Goldfarb promised to terminate the pending eviction proceedings if they moved by that date. (*Id.* ¶¶ 20, 23.) The proceedings were dismissed on February 22, 2012, "with prejudice by plaintiff." (*Id.* ¶ 17, Exh. E.)[5]

### C. Facts Material to the Moore Family's Retaliation Claims

The Moore family lived at the Aventine between sometime in 2008 and November 2011. (Affidavit of M.M. Moore ¶¶ 2-3 [Doc. # 94].)

On October 25, 2010, Teresa Otero, the Aventine's property director, served a "Three-Day Notice to Perform Conditions And/Or Covenants to Quit" on the Moores (Supplemental Declaration of Katherine A. Tatikian ¶ 34, Exh. 2 [Doc. # 95].) It is not clear from the record what became of this notice.

---

[4] The Court admonishes Plaintiffs for failing to provide these facts in their supplemental affidavits. The Court's order explicitly requested the date of the "first" eviction notice. [Doc. # 92.]

[5] Plaintiffs also assert that the Sturm family was told by management to spy on the Magee family. (Opp'n at 7 (citing Exhibit A, page 13 to the Supplemental Okojie Declaration)). The letter at Exhibit A states that the Sturms were asked to take pictures of faulty plumbing and "pin" it on "said residents," but it does not mention the Magees or who "said residents" are. (*Id.*)

During their time at the Aventine, the Moore family made various complaints regarding the Aventine's inaccessibility to disabled individuals (Decl. of M.M. Moore at ¶ 11 [Doc. # 37-10]) and complained of race discrimination (M.M. Moore Decl. ¶ 3). For the most part, the Supplemental Affidavit of M.M. Moore does not provide the dates of these complaints. Apparently, M.M. Moore made complaints regarding disability accommodations during the spring and summer of 2011. (M.M. Moore Aff. ¶¶ 12, 14.) Sometime around the end of summer 2011 or September 2011, M.M. Moore spoke with a female manager she believes is named Jenny Pomboza regarding the status of her previous disability accommodation requests, and she also complained that her African American granddaughter was "being mistreated by the security guards and being called derogatory names by the guards." (*Id.* ¶¶ 16-17.) During this meeting, the female manager accused the Moore family of not paying rent. (*Id.* ¶ 18.)[6]

"Within a month" after this conversation, the same female manager provided the Moore family with an "un-stamped copy of an eviction lawsuit." (M.M. Moore Aff. ¶ 20.) She informed M.M. Moore that if the family did not move out, the lawsuit would be filed. (*Id.*) There is testimony in the record that management eventually located the missing rent funds, although it is unclear when this occurred in relation to the filing of the eviction action. (Okojie Supp. Decl. ¶ 9, Exh. D ("Alfonzia Moore Depo.") at D38:1-9 [Doc. # 87].)

Alfonzia Moore testified that the Moore family moved out of the Aventine because M.M. Moore "was almost becoming a shut-in" due to the stairs leading to her apartment.

---

[6] Defendants argue that M.M. Moore made a statement in her deposition that contradicts her affidavit. In her deposition, M.M. Moore stated that she spoke to Jenny Pomboza, but that she could not remember whether she had complained to her about "anything serious." (Tatikian Decl. ¶ 10, Exh. I ("M. M. Moore Depo.") at I-206 [Doc. # 86].) Moore's Affidavit states that she complained to a "female manager, who I believe is named Jenny Pomboza" about her reasonable accommodation requests and discrimination against her African American granddaughter. (M.M. Moore Aff. ¶¶ 16-17.) The statements are not contradictory on whether Moore spoke with Pomboza. Because her statement regarding a "serious" complaint is subjective and not clearly contradictory, the Court considers the evidence in the Moore Affidavit regarding her complaints to Pomboza. Obviously, Defendants are free to subject Moore to cross-examination at trial.

(Tatikian Decl. ¶ 11, Ex. J ("Alfonzia Moore Depo.") at 29:7-20 [Doc. # 31-6].) M.M. Moore states that they also moved out because of the threatened eviction. (M.M. Moore Aff. ¶ 21.)

An eviction proceeding was filed against Alfonzia Moore by the Aventine on October 20, 2011. (M.M. Moore Aff. ¶ 23, Exh. F.) The family moved out on November 7, 2011. (*Id.*)

### III.
### STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT

In its September 30, 2013 Order, the Court articulated the standard for motions for summary judgment. [Doc. # 49.] The Court applies the same standard to the pending motion.

### IV.
### DISCUSSION

Defendants move for summary judgment on Plaintiffs' claims of retaliation under section 3617 of the FHA, which provides:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.[7]

42 U.S.C. § 3617. Courts apply the *McDonnell Douglas Corp. v. Green*, 411 U.S. 972, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973), burden-shifting analysis to retaliation claims under the FHA. *See Walker v. City of Lakewood*, 1128 (9th Cir. 2001). "To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a protected activity; (2) the defendant subjected him to an adverse action; and (3) a causal link exists

---

[7] In relevant part, section 3604 makes it unlawful to discriminate in a rental or otherwise deny a dwelling because of any "handicap" of a renter or a person residing with that renter. 42 U.S.C. § 3604(f)(1)-(2). It also makes it unlawful to discriminate on the basis of race. Id. at § 3604(b).

-7-

between the protected activity and the adverse action." *Id.* at 1128 (citing *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464 (9th Cir. 1994)).

Under Section 3617, an adverse action must be in the form of coercion, intimidation, threats, or interference. 42 U.S.C. § 3617; *see also Walker*, 272 F.3d at 1128-29. "Interference" constitutes meddling in or hampering an activity. *Id.* at 1128-29. The Ninth Circuit interprets "interference" broadly to mean "interfering with the exercise of rights under the federal fair housing laws." *Id.* "Coercion" requires compelling an act or choice by "force, threat, or other pressure." *Id.* at 1129. A "threat" is an expression of inflicting damage on another. *Id.*

"[I]n some cases, causation can be inferred from timing alone where an adverse . . . action follows on the heels of protected activity." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) (noting that in the context of summary judgment an eighteen-month lapse is too long to establish causation without other evidence) (citations omitted); *see also Walker*, 272 F.3d at 1130 (causation established when city sent letter to housing organization "less than two weeks" after receiving complaint).

Once a plaintiff presents a *prima facie* claim for retaliation, the burden shifts to the defendant to articulate a "legitimate nondiscriminatory reason for its decision." *Id.* at 1128. If the defendant meets this burden, then the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretextual. *Id.* A plaintiff must meet this burden by "persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (internal quotation marks and citations omitted); *see also Sanghvi v. City of Claremont*, 328 F.3d 532, 536 n.3 (9th Cir. 2003) (Title VII framework applies to FHA claims).

A. **Defendants are Not Entitled to Summary Judgment on the Sturm Family's Retaliation Claims**

Defendants argue that the Sturm family's retaliation claims are barred by *res judicata* and also that Plaintiffs have failed to submit sufficient evidence to create a triable issue of material fact in regard to retaliation against the Sturm family.

1. **Defendants Have Not Established that The Sturms' Retaliation Claims are Barred by *Res Judicata***

As a preliminary matter, Defendants assert that the Sturms' retaliation claims are barred by *res judicata* because the Sturms could have presented the claims in the unlawful detainer action that resulted in their eviction. (Motion at 13-14.)

When determining the preclusive effect of a state court judgment, federal courts follow the state's rules of decision. *White v. City of Pasadena*, 671 F.3d 918, 926 (9th Cir. 2012) (citing *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 482, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982)). In California, the doctrine of *res judicata*, or claim preclusion, "describes the preclusive effect of a final judgment on the merits." *Mycogen Corp. v. Monsanto Co.*, 28 Cal. 4th 888, 896, 123 Cal. Rptr. 2d 432 (2002). A judgment "serves as a complete bar to further litigation," *Slater v. Blackwood*, 15 Cal. 3d 791, 795, 126 Cal. Rptr. 225 (1975), when "(1) the decision in the prior proceeding is final and on the merits; (2) the present proceeding is on the same cause of action as the prior proceeding; and (3) the parties in the present proceeding or parties in privity with them were parties to the prior proceeding." *Silverado Modjeska Recreation & Parks Dist. v. County of Orange*, 197 Cal. App. 4th 282, 297, 128 Cal. Rptr. 3d 772 (2011) (quoting *Fed'n of Hillside & Canyon Ass'ns v. City of Los Angeles*, 126 Cal. App. 4th 1180, 1202, 24 Cal. Rptr. 3d 543 (2004)) (internal quotation mark omitted).

In *Vella v. Hudgins*, 20 Cal. 3d 251, 142 Cal. Rptr. 414 (1977), the California Supreme Court considered the preclusive effect of an unlawful detainer action. It held that *res judicata* did not apply because the plaintiff did not have "a full and fair

opportunity to litigate" her fraud defense in the unlawful detainer action—even though she raised the defense in the action. *Id*. at 257. The Court explained that ordinarily an unlawful detainer proceeding "is summary in character" and "affirmative defenses, legal or equitable, are permissible only insofar as they would, if successful, 'preclude the removal of the tenant from the premises.'" *Id*. at 255 (quoting *Green v. Superior Court*, 10 Cal. 3d 616, 634, 111 Cal. Rptr. 704 (1974)). Therefore, "a judgment in unlawful detainer usually has very limited res judicata effect and will not prevent one who is dispossessed from bringing a subsequent action to resolve questions of title or to adjudicate other legal and equitable claims between the parties." *Id*. (internal citations omitted).

Defendants do not provide the Court with a copy of the unlawful detainer decision or any evidence of the claims in that case, and they do not otherwise provide evidence to support a conclusion that Plaintiffs had a "full and fair" opportunity to litigate their FHA retaliation claim in the action. As Defendants themselves point out, an unlawful detainer action is conclusive as to other litigated issues when "litigants to a[n] [u]nlawful [d]etainer [a]ction fully try other issues besides right of possession." (Motion at 15.) Here, there is no evidence that the parties fully tried other issues in the underlying unlawful detainer action, let alone that the Sturms' raised a FHA retaliation claim and also had "a full and fair opportunity to litigate" it. *See Vella*, 20 Cal. 3d at 257.

Accordingly, the Court **DENIES** summary judgment on the Sturms' retaliation claims on the basis of *res judicata*.

### 2. There is a Dispute of Material Fact Precluding Summary Judgment on the Sturm Family's Retaliation Claims

In order to establish a *prima facie* claim of retaliation under the FHA, the Sturms must first provide evidence that they engaged in a protected activity. The Sturms testified that they made various requests for disability accommodations. (Okojie Decl. ¶ 4, Ex. A ("J.W. Sturm Depo.") at 73:1-22; 201:2-7 [Doc. # 37-5].) They also testified

that they complained to management regarding Aventine employee's and security guard's discriminatory treatment of their African American neighbors. (*Id.* at 69:1-20; 76:3-25; 77:1-11.) Defendants appear to argue that informal complaints to the Aventine do not constitute protected activity under the FHA and that complaints must be made to a government agency. (Motion at 6.). They offer no support for this proposition, and Ninth Circuit law is to the contrary. *See Harris v. Itzhaki*, 183 F.3d 1043, 1048 (9th Cir. 1999) (*prima facie* claim of retaliation under the FHA where tenant made informal, oral complaint to management that comments were racist); *see also Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 506 (9th Cir. 2000) (informal complaints sufficient under Title VII). Thus, the Sturms' informal complaints of race discrimination and requests for disability accommodations are protected activities under the FHA. 42 U.S.C. § 3604(b), (f).

There also is a triable issue of fact as to whether the Sturms were subject to an adverse action. Eviction constitutes an adverse action under the FHA. *See Harris*, 183 F.3d at 1050-52 (*prima facie* claim established for purpose of summary judgment where tenants presented evidence of emotional distress due to feared eviction notices for informal complaints about racial comments); *see also Neudecker v. Boisclair Corp.*, 351 F.3d 361, 364 (8th Cir. 2003) (threats of eviction are adverse action under FHA).

There is a dispute of material fact regarding the cause of the Sturm family's eviction. Sometime in the summer of 2011, the Sturms complained to Regional Manager Geoff Goldfarb about "mistreatment directed at the African American residents as well as the failure by Defendants to accommodate the handicapped tenants at the Aventine." (J.W. Sturm Aff. ¶¶ 8, 10.) Then, the "next thing" the Sturms learned was that the Aventine had filed an eviction action. (*Id.* ¶ 16.) The eviction action was filed on August 19, 2011. (*Id.* ¶ 16.) Finally, when the Sturms attempted to pay their unpaid rent, they were told by management that the Aventine wanted them to move out because they

"complained too much." (*Id.* ¶ 19.) Therefore, there is a triable issue of material fact as to whether the Sturms' complaints caused their eviction.

In response, Defendants present evidence that Plaintiffs were evicted for a non-discriminatory reason—for failure to pay their rent. (Tatikian Supp. Decl., Exh A ("J.W. Sturm Depo.") at 198:1-4. [Doc. # 86-4].) The burden thus shifts back to Plaintiffs to establish pretext. Plaintiffs do not deny that they failed to pay rent.[8] Instead, they point to deposition testimony that regional manager Geoff Goldfarb came to the Sturms' apartment in response to their complaints and told them that they need not pay rent until "the issues were resolved." (Okojie Supp. Decl., Exh. A ("J.W. Sturm Depo.") at 189:5-25; 190:1-6.) [Doc. # 87].) It is not clear from the record whether these particular complaints were ever addressed. Regardless, J.W. Sturm claims that manager Jenny Pomboza refused the Sturms' offer to pay outstanding rent and told her that Defendants wanted her family out "because we complained too much." (J.W. Sturm Aff. ¶ 19.) J.W. Sturm also states that managers "call[e] the police to falsely accuse us of threatening African Americans with a shotgun." (*Id.* ¶ 11.) Therefore, Plaintiffs have established that there is a triable issue of fact as to Defendants' motivations for evicting the Sturms.

Accordingly, the Court **DENIES** Defendants' motion for summary judgment on the Sturms' FHA retaliation claims.

## B. Defendants are Not Entitled to Summary Judgment on the Magee Family's Retaliation Claims

Plaintiffs have presented evidence that the Magee family complained of disability discrimination against their neighbors. (Okojie Decl. ¶ 6, Ex. C ("Hope Magee Depo.") 149:1-19 [Doc. # 37-7].) Their complaints on behalf of their disabled neighbors

---

[8] Defendants argue that Plaintiffs have failed to meet their burden of establishing pretext because in their Opposition they include "neither evidence nor authority" under the pretext heading. (Reply at 21.) A plaintiff "does not necessarily have to introduce additional, independent evidence of discrimination" to make a showing of pretext at summary judgment. Snead v. Metro. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1094 (9th Cir. 2001).

constitute protected activity under the FHA because the Magee family "aided or encouraged [another] person in the exercise or enjoyment of, any right granted or protected by" the FHA. 42 U.S.C. § 3617; *see also Walker*, 272 F.3d at 1128. Plaintiffs have also presented evidence that the Magee family complained of race discrimination. (Hope Magee Aff. ¶ 14.)

As discussed above with regard to the Sturm family's eviction, the Magee family's eviction constitutes an adverse action under the FHA. *See Harris*, 183 F.3d at 1050-52 (threat of eviction is adverse action). Although the Magee family eventually agreed to move out, the agreement was made in exchange for an agreement that the Aventine dismissing the unlawful detainer proceedings against them. (Hope Magee Depo. at 106:14-25; 107:1-6 [Doc. # 37-7].) Therefore, Plaintiffs have established the first two prongs of a *prima facie* claim for retaliation.

Plaintiffs have also submitted some evidence to establish the third prong of their *prima face* claim of retaliation—that the Magees' complaints regarding accommodation of their neighbor's disabilities and their complaints of race discrimination caused their eviction. First, Plaintiffs present evidence that the manager Isaac Montealegre told the Magees that their lease would not be renewed due to their complaints of race discrimination and complaints on behalf of disabled neighbors. (Hope Magee Aff. ¶ 14.) Second, Hope Magee testified that the family was evicted after they made complaints regarding, among other things, the need to accommodate the Sturms. (Okojie Decl. ¶ 6, Ex. C (Hope Magee Depo.) 149:1-19 [Doc. # 37-7] ("Because once we started to ask for these things to be fixed or for them to be accommodated . . . then they started to aggressively come after us with different allegations."); (Okojie Supp. Decl., Exh. C (Hope Magee Depo.) 112:1-7 [Doc. # 87] ("[I]t wasn't until we were complaining about what wasn't getting fixed . . . that they started to say that we were selling things out of our apartment").) While Plaintiffs leave much to be desired in providing facts to clarify the precise timing of those complaints vis à vis the commencement of eviction

proceedings—despite the Court's express request for such information—the Court can plausibly infer from the context of Hope Magee's statement that the adverse action followed shortly on the heels of the complaints.

Finally, Plaintiffs also present some evidence that the Magees' eviction was pretext for discriminatory retaliation. Montealegre allegedly told the Magees that their lease would not be renewed due to complaints of race discrimination and complaints on behalf of disabled neighbors. (Hope Magee Depo. ¶ 14.) In addition, Plaintiffs claim that Aventine management asked Sandra Ashley Sturm to spy on her African American neighbors. (Okojie Supp. Decl. Okojie ¶ 6, Exh. B ("Sandra Ashley Sturm Depo.") at 23:25 [Doc. # 87].) This evidence gives rise to a triable issue of material fact regarding pretext.

The Court therefore **DENIES** Defendants' motion for summary judgment on the Magees' FHA retaliation claims.

## C. Defendants are Not Entitled to Summary Judgment on the Moore Family's Retaliation Claims

The Moore family made complaints regarding the building's inaccessibility to disabled individuals (Decl. of M.M. Moore at ¶ 11 [Doc. # 37-10]) and also complained of race discrimination (M.M. Moore Decl. at ¶ 3). As discussed above, these are protected activities under the FHA. In addition, the Moore family was threatened with eviction, which constitutes an adverse action. (Okojie Supp. Decl. ¶ 9, Exh. D ("Alfonzia Moore Depo.") at D35:13-25 [Doc. # 87].)

The Moore Plaintiffs also provide evidence from which an inference can be drawn that the eviction action was caused by their protected activities. M.M. Moore's affidavit states that during a conversation with a female manager during which Moore complained of the lack of disability accommodations and of guards calling her granddaughter by a derogatory name, the manager accused the Moore family of not paying rent. (M.M. Moore Aff. ¶ 18 [Doc. # 94].) "Within a month" after this conversation, the same

-14-

manager provided the Moore family with an "un-stamped copy of an eviction lawsuit" and threatened to file it if the family did not move out. (M.M. Moore Aff. ¶ 20.) An eviction proceeding was filed against the Moores on October 20, 2011. (M.M. Moore Aff. ¶¶ 22-23, Exh. F.) The family moved out on November 7, 2011. (*Id.* ¶ 22.) Therefore, drawing all factual inferences in favor of the Plaintiffs, the Court concludes that there is a triable issue of fact regarding the cause of the Moore family's eviction.

Finally, evidence of pretext exists. The Moore family claims they paid their rent (Okojie Supp. Decl. ¶ 9, Exh. D ("Alfonzia Moore Depo.") at D35: 13-25 [Doc. # 87]) and that the allegation that they had not paid rent arose when M.M. Moore complained to a manager regarding the need for disability accommodations and that guards called her granddaughter, who is African American, "derogatory names." (M.M. Moore Aff. ¶¶ 16-18; Decl. M.M. Moore ¶ 4.) And as stated above, Sandra Sturm claims that she was asked by management to spy on her African American neighbors. (Okojie Supp. Decl. ¶ 6, Exh. B ("Sandra Ashley Sturm Depo.") at 23:25 [Doc. # 87].)

Accordingly, the Court **DENIES** Defendants' motion for summary judgment as to the Moore Plaintiffs' FHA retaliation claims.

## V.

## CONCLUSION

In light of the foregoing, Defendants' Supplemental Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

DATED: January 27, 2014

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE